PRESTON COAL & IMPROVEMENT CO. v. RAVEN RUN COAL CO.

(Circuit Court of Appeals, Third Circuit.   December 5, 1912.)

No. 36 (1,654).

ADJOINING LANDOWNERS (§ 6*)—PERSONAL PROPERTY—ESCAPE—LOSS OF OWN-
ERSHIP.

Plaintiff constructed a culm bank on land belonging to it and extend-
ing over the boundary line onto land which it rented for the purpose from
the city of Philadelphia for a term of five years in July, 1870.  The bank
not having been removed, the city in 1889 began reclaiming the coal on
the city's land, and the dirt having been removed to a point so that it
would run or drift down from plaintiff's land to the land of the city,
plaintiff was advised to take steps to prevent such drifting, but refused
to do so, notifying the city of its objection to any work on the bank, the
effect of which would be the removing of the same from plaintiff's land.
*Held*, that plaintiff, by failing to take steps to hold the bank on its own
land, did not lose its title to the part that drifted down therefrom to the
land of the city, and that defendant, under contract with the city, had no
right to remove and convert the coal that so drifted from plaintiff's land.

[Ed. Note.—For other cases, see Adjoining Landowners, Cent. Dig. §§
10–16, 25–37, 49–52; Dec. Dig. § 6.*]

In Error to the District Court of the United States for the Eastern
District of Pennsylvania; James B. Holland, Judge.

Action by the Preston Coal & Improvement Company against the
Raven Run Coal Company.  Judgment for defendant, and plaintiff
brings error.  Reversed, with directions.

John F. Whalen, of Pottsville, Pa., for plaintiff in error.

I. Hazleton Mirkil, Francis E. Brewster, and A. M. Beitler, all of
Philadelphia, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit
Judges.

GRAY, Circuit Judge.  From the record brought up by the writ
of error in this case, we gather the following statement of facts, as
to which there is no controversy:

On the 13th day of July, 1870, the city of Philadelphia leased to
the plaintiff in error, who was plaintiff below, the right and leave of
depositing the dirt from mines No. 1 and 2 of the said plaintiff, upon
a certain piece of land, containing about seven acres, belonging to the
city of Philadelphia and situate in the county of Schuylkill, in the
state of Pennsylvania, "the said party of the second part" to have and
to hold the aforesaid right and leave of depositing the dirt from its
mines upon the said land for the period of five years, at the rent of
one cent per ton for all coal that the said party of the second part
should transport during each year from mines Nos. 1 and 2, said
rent to be paid in monthly instalments, the number of tons of coal
shipped from said mines to be determined by the scale returns of the
Reading Railroad Company.  Pursuant to this lease, the plaintiff, the
Preston Coal Company, deposited the dirt from said mines, dumping,

as required, all slate and stone separate from the coal dirt, during the five years named in the contract. This coal dirt was a refuse which could not be utilized or sold at the time it was dumped upon the city's lot, and formed what is known as a "culm bank." It is in evidence, however, that it was not entirely unforeseen that in future such culm might have a value. The lease seems to have been made for the term of five years, because of a provision in the will of Stephen Girard, devising these lands to the city of Philadelphia, which restricted all leases to that term. It does not appear from the record whether this coal dirt continued to be deposited on the leased premises after five years, or not. The bank, however, seems to have remained, by sufferance or tacit agreement, where it had been formed.

The land of the plaintiff joined the leased premises, and the culm bank on plaintiff's land was simply continued over the line separating it from said premises, and continued to be formed thereon. This seems to have been the necessary import of the agreement at the time of the lease; that is to say, that there should be no physical separation between the culm on plaintiff's land and that on defendant's land. So that the present situation is apparently what the parties intended. About 1889, the city of Philadelphia began reclaiming part of the coal in this culm bank, which it was able to place upon the market, and the Raven Run Coal Company, the defendant in possession, by agreement with the said city, was authorized to complete the removal of the entire culm bank. The plaintiff company appears to have raised no objection to the city or its lessee, to the removal of this coal dirt, until the defendant approached so close to the dividing line of the property of the plaintiff and the city that, in the further removal of the coal dirt from the city's land, the culm from the plaintiff's land began to run or drift down onto the land of the city. The culm bank, begun on the plaintiff's land and running over onto the leased lot, was a very large one. When the city began the removal of the culm upon its land, it gave the defendant, the Raven Run Coal Company, the exclusive license, right and privilege of screening, carrying away and selling coal recovered from the culm bank, reserving to the city a royalty to be paid therefor. When the defendant company, in its operation, approached the dividing line sufficiently close to cause the coal dirt from the plaintiff's land to run over upon the city's lot, the plaintiff was notified by a letter from the engineer of the city of Philadelphia, under date of January 11, 1906, that the city of Philadelphia had directed the defendant company to take up, screen, prepare and ship to market all the coal dirt on the ground leased to the plaintiff, and not only the coal dirt now on the ground, but also that which may fall over upon the leased land from the land adjoining, and to pay royalty therefor to the city. "I am advising you of this intention of the city, in order that, if you desire to do so, you may take such steps as may be necessary to keep the coal dirt west of the line, upon your ground, and prevent it from falling upon the land of the Girard estate." To this letter, reply was made on behalf of the plaintiff and its lessee, the Philadelphia & Reading Coal & Iron Company, that they objected to any work being done by the

Raven Run Coal Company, the effect of which would be the removing of any of the coal banks on the lands of the Preston Coal & Improvement Company.

There was further correspondence, which resulted in the city of Philadelphia refusing, by letter of February 19, 1906, to make any arrangement to leave any of the coal dirt of the plaintiff's culm bank unworked, or as the property of any one other than itself, the city of Philadelphia, "nor to consider the ownership of any of the coal deposited along the division line between the Girard estate and the Preston estate, which may fall upon the Girard estate, to be in any other than itself." Nothing was done by the plaintiff company to prevent the coal dirt in its culm bank from running over onto the city's lot, and the defendant proceeded to screen and prepare the coal from such culm for the market, and sold and delivered the same to purchasers. This was done until the work had proceeded so far that the bottom of the slope from the plaintiff's culm bank was on the plaintiff's side of the dividing line between it and the defendant.

It is not disputed that the coal recovered from the culm of the bank on plaintiff's land, which drifted down across the line that separated such land from that of the defendant, was appropriated by the defendant and screened, marketed, and sold by it. It is conceded that the value of this coal, as realized by the defendant, was $3,015, and the same has never been paid to the plaintiff. Payment of the same being refused, plaintiff brought suit July 20, 1908, charging an appropriation of the coal so sold by the defendant, amounting to upwards of 18,000 tons, between the months of January, 1906, and January, 1908, and claimed damages therefor.

Though the culm deposited by plaintiff on defendant's land was so deposited under and by virtue of an agreement or lease, giving the plaintiff leave and right to so deposit the same during a period of five years, for which it is not denied that the stipulated rent was paid, and though the said culm seems to have remained upon said land after the end of the term, by sufferance or tacit agreement, no claim of property in the same was ever made by the plaintiff company. The coal recovered from this large bank, amounting to many thousands of tons, was treated by the defendant as its own, and a large sum of money was realized by it therefrom. Whatever question might have been raised as to the property in this coal stored by plaintiff on the lot of the defendant, as a rented depository of the same, has been determined by the abandonment by plaintiff of all claim thereto. The only question with which we are here concerned is the claim made for the coal that drifted down from the culm bank on the plaintiff's land onto the land of the defendant.

It will be recollected that this drift of coal from the plaintiff's bank was caused by the operations of the defendant, in removing the culm bank which had been deposited on its land under its lease to the plaintiff for that purpose. We are unable to understand how, as was claimed by the defendant, the plaintiff lost its right of property in the coal that thus drifted down from the culm bank on its own land. The law does not permit title to personal property to be so easily

divested. No wanton or willful act of the plaintiff caused the deposit of this coal on defendant's land. It could only have been prevented, so far as plaintiff was concerned, by the building of a perpendicular wall on the dividing line. We have no difficulty in deciding that plaintiff was under no obligation to perform a thing so unreasonable, if not impossible, and that plaintiff's right of property in the coal was not lost by the failure so to do. Even though this coal had so drifted onto defendant's land, by reason of palpable neglect on the part of plaintiff to retain it, its right of property therein was not thereby forfeited to the defendant.

It is well settled that title to personal property that is lost is not vested in the finder. Straying animals and drift timber stranded on another's land do not become the property of the owner of the land to which the animals have strayed or on which the timber is stranded. The true owner may always claim and recover his property whenever and wherever he may find it. These simple and fundamental principles of law are not affected by the rights given by statute or common law to the finder of lost property, or to the owner of land onto which the property of another has come. These rights are not rights of property, but mere adjustments of claims suggested and imposed by convenience and custom. So, in the case at bar, though the defendant could not despoil the plaintiff of his property, as a penalty for its having been allowed, either negligently or non-negligently, to drift onto defendant's land, defendant had a right, after due notice, to remove the same at the expense of the plaintiff, but no right to appropriate and convert it to his own use against its protest.

We think, therefore, that the court below was in error, in granting defendant's motion for judgment, non obstante veredicto. The judgment, therefore, is reversed, with directions to enter judgment upon the verdict in favor of the plaintiff.