**DAVENPORT v. RAILROAD COMMISSION OF TEXAS et al.**

No. 8454.

Court of Civil Appeals of Texas. Austin.

Jan. 29, 1936.

Rehearing Denied Feb. 19, 1936.

H. L. DeBusk, of Kilgore, for appellant.

Wm. McCraw, Atty. Gen., and Wm. J. Holt, Joe Sharp, T. F. Morrow, Wm. C. Davis, Wm. Madden Hill, and Harry S. Pollard, Asst. Attys. Gen., for appellees.

BAUGH, Justice.

This suit was brought by appellant in the district court of Travis county as an appeal from an order of the Railroad Commission refusing appellant a tender to move 2,812 barrels of oil located in a designated storage tank in Kilgore, Gregg county, Tex. The trial court sustained a general demurrer and several special exceptions, in the nature of general demurrers, to plaintiff's petition, and in its decree recited that "Plaintiff refuses to amend and he is denied the relief sought."

██ Having sustained a general demurrer, and the plaintiff having appealed therefrom, it becomes unnecessary for us to consider the special exceptions sustained. We are met at the outset with the question as to what is the nature and import of the trial court's judgment. The judgment reads:

"On this the 9th day of November, 1935, came the parties by their attorneys, and then came on to be heard the defendants' general demurrer and special exceptions to the plaintiff's petition, and the argument of counsel thereon having been heard, it is the opinion of the court that the law is for the defendants; Plaintiff refuses to amend and he is denied the relief sought.

"It is ordered, adjudged and decreed by the Court that defendants' general demurrer to plaintiff's petition as filed herein be sustained, to which action of the Court the plaintiff in open court excepted and gave notice of appeal."

The remainder of the judgment merely sustained the special exceptions.

It is to be noted that the trial court did not dismiss the cause. Appellee insists that the relief sought was merely a temporary injunction, and that the pleadings show that if such temporary injunction had been granted, it would have, as held by us in Railroad Commission v. Real, 80 S.W.(2d) 494, and companion cases thereto reported

in said volume (Railroad Commission v. Burnham, 80 S.W.(2d) 496; Railroad Commission v. Tyler Texas Oil & Refining Co., 80 S.W.(2d) 500; Railroad Commission v. Linzie Refining Co., 80 S.W.(2d) 504; Railroad Commission v. Archer, 80 S.W.(2d) 506; Railroad Commission v. Bradshaw, 80 S.W.(2d) 508; Railroad Commission v. Primrose Petroleum Co., 80 S.W.(2d) 509; Railroad Commission v. Phœnix Refining Co., 80 S.W.(2d) 510), amounted to a destruction of the status quo, instead of maintaining it pendente lite, in that appellant would thus have been enabled to sell and dispose of said oil, removing it beyond the jurisdiction of the court, and thus leave nothing to litigate. It becomes necessary, therefore, to determine the nature and purpose of his pleadings, and the effect of the trial court's judgment in considering the issues presented.

Appellant alleged, among other things, that "Plaintiff is the rightful and lawful owner of 2812 barrels of crude oil, which is commonly known as waste oil or fugitive oil or abandoned oil, which he picked up in traps constructed and maintained by him on and adjacent to certain creeks, drains, and ditches in Gregg County, Texas, upon a certain tract of land known and designated as the Gelber lease in the city of Kilgore, in said county, and upon which the plaintiff herein caused to be constructed a reclamation plant and traps for the purpose of capturing said waste or abandoned or fugitive oil and reclaiming the same. Plaintiff would further represent and show to the Court that a proper organization report, showing the ownership of said reclamation or treating plant, is properly filed with the Railroad Commission at its Kilgore office in compliance with the rules and regulations of the Railroad Commission of Texas."

He further alleged that the Railroad Commission had promulgated, as applicable to such oil, the following rule: "In case any oil is picked up or reclaimed by such plant (reclamation plant or waste oil plant) from any creek, river, stream, or bed thereof, such report shall also contain the information as to the apparent source of the oil before it went into such creek, river, stream or the bed thereof."

Plaintiff also alleged that but for his pick-up plant said oil would have flowed down said stream, polluted waters below, and would have been lost or wasted; that

it was impossible for him to show the sources or apparent sources of said oil, and that he had filed with the commission, along with his application for tender, an affidavit stating and showing to the best of his ability the source of said oil; that the tender board of the Railroad Commission heard no evidence on his application, made on the form prescribed by the commission, failed and refused to consider the affidavit as to its source or apparent source attached thereto, but arbitrarily rejected his application for a tender to sell and move said oil. The application made and rejected was attached to his petition and the order of rejection indorsed thereon by the tender board reads:

"And it appearing to the Tender Board of the Railroad Commission of Texas as agents of the Railroad Commission of Texas, that said tender does not show the source of said oil; nor does it show the apparent source of said oil; nor does it show that this oil was produced in accordance with the rules and regulations of the Railroad Commission of Texas, and the conservation laws of Texas, and such Board is of the opinion this tender should be rejected;

"Therefore, it is the judgment of the Tender Board of the Railroad Commission of Texas, as agents of the Railroad Commission of Texas, that Tender No. SW-3 #6-1895 from J. M. Deavenport to J. M. Deavenport for the amount of 2,812 barrels should be rejected, and is hereby rejected, because this Board is unable to determine the source or apparent source of the said oil, and because this Board further finds that the said 2,812 barrels of oil has not been produced and placed in storage in accordance with the rules and regulations of the Railroad Commission of Texas, and/or laws of the State of Texas."

The first relief asked for by appellant in his petition was that the court overrule the arbitrary action of the commission and enjoin it and its agents from interfering with his sale and transportation of said oil. The further prayer of his petition reads: "He prays further that the said Commission and its said agents, by the Court's mandatory writ of injunction, require the said Commission and its said Agents to issue to plaintiff tender on such application, wherein it shall be declared that such arbitrary action of the said Agents in rejecting said application be set

aside and held for naught, and that the plaintiff·be held entitled to a tender for the selling, transporting and marketing of said oil and its products and all of the products thereof, and that any purchaser or refinery purchasing said oil and refining the same is entitled to a tender for the products thereof; and he prays for all other and additional relief, both at law and in equity, to which he may be entitled."

■ The plaintiff's petition herein shows upon its face that it was brought to review the action of the tender board under the provisions of section 9, Acts Reg. Sess. 44th Leg.(1935) c. 246, p. 624 (Vernon's Ann.Civ.St. art. 6066a, § 9). This act requires the tender board, where a tender is rejected, to indorse thereon "all the reasons for such rejection." But for this provision the order of the commission entered without stating the reasons therefor, would be presumed to have been based on valid grounds. The obvious purpose of the act, however, was to properly advise an applicant the exact basis or grounds of the commission's order, thus enabling the applicant to meet the commission's requirement for a tender, or to afford him specific grounds of review of the order in an appeal therefrom to the court. We have already held that failure or refusal of the commission to give its reasons for such refusal, in view of such statute, constituted arbitrary action on its part. Davenport v. Railroad Commission (Tex.Civ.App.) 85 S. W.(2d) 661. In so far as the reasons stated by the commission that the oil in question was not produced and stored in accordance with the rules and regulations of the commission and/or the laws of the state, it does not, in our opinion, meet the requirement of section 9 of the act above referred to.

But the order of rejection recites that the application did not show the source or apparent source of such oil, as required by the rules of the commission. Such requirement by the commission is not unreasonable. But appellant alleged that he had furnished to the tender board by affidavit, which he also alleged that it refused to ·consider, all the proof on this question which it was possible ·for him to make. By the very nature of the oil and the method of its capture, it is manifest that there may be instances where it would be impossible to trace such waste oil to its probable source. Neither the law nor the rules of the commission require the impossible.

They should receive a reasonable·application. The operation of a pick-up plant is not in itself an illegal enterprize. See 31 Tex.Jur. 515, and numerous cases there cited. If appellant were legally engaged in operating such pick-up station, gathering only waste or fugitive oil with whose production he had nothing to do, his property so acquired should not be in effect destroyed or confiscated by exacting from him unreasonable or impossible information as to its source.

However that may be, appellee contends, in support of the trial court's action, that appellant's petition sought merely a temporary injunction, and that the action of the trial court was but a denial thereof. With this we cannot agree. Section 9 of the act above referred to provides: "The Court hearing such petition shall have the power to sustain, modify or overrule any action of such agent relative to a tender application and to issue such restraining orders or injunctions as the facts may warrant."

■ While appellant's petition may have been subject to special exception in some respects, it is manifest that it was brought under the above-cited act for the purpose of reviewing the order of the tender board and to test its validity. The injunctive relief sought was but ancillary to a determination of that issue and dependent upon it. C. A. Davenport v. Railroad Commission, 89 S.W.(2d) 1006, decided by this court on December 11, 1935; Railroad Commission v. Patton (Tex.Civ.App.) 89 S.W.(2d) 1010, decided the same day. The court would clearly have been justified in denying a temporary injunction upon the facts pleaded, for the reason that granting such would probably have destroyed instead of preserving the status quo of the property involved. But there still remained the right of appellant to be heard upon· the merits of his suit to test the validity of the order attacked. That was a part of the relief sought. And the effect of the trial court's action in sustaining a general demurrer was to deny him a hearing upon that issue.

■ The questions·here involved were fully considered by us (Judge Blair writing) in C. A. Davenport v. Railroad Commission, supra, and a further discussion of them here is unnecessary. The appellant was entitled, under his ·pleadings, as against a general demurrer, to a hearing

upon the merits of his attack upon the commission's order; and the trial court erred in so sustaining such demurrer. Its judgment is therefore reversed, and the cause remanded.