CROSSON v. LION OIL & REFINING COMPANY.

Opinion delivered October 19, 1925.

FINDING LOST GOODS—TITLE TO ESCAPING OIL.—Where oil escaped from plaintiff's pipe line and flowed upon defendants' land and was there impounded by defendants, and plaintiff asserted its claim as soon as it ascertained that the oil had escaped and was in defendants' possession, there was no abandonment of the oil, and it remained the property of the plaintiff.

Appeal from Union Circuit Court; *L. S. Britt,* Judge; affirmed.

STATEMENT OF FACTS.

Lion Oil & Refining Company brought this action in the circuit court against James Crosson to recover the possession of four hundred barrels of crude oil.

Crosson filed an answer, in which he denied that he took possession of the oil sued for, and states that he has no interest in it except a one-eighth royalty.

W. B. Eason was allowed to intervene in the case, and claim the oil as his own property.

The record shows that the Lion Oil & Refining Company owns a pipe line to transport oil from its various oil wells in Union County, Arkansas, to its refinery at El Dorado, in said county. The pipe line is about seven miles long, and has a capacity of nine or ten thousand barrels of oil per day. Its pipe line at one point is laid along its right-of-way adjoining a tract of land owned by the Fitzgeralds and leased by them to the Gladys-Belle Oil Company for the purpose of drilling oil wells. By the terms of the lease, the lessor was to receive as royalty one-eighth of all the oil produced by the lessee. James Crosson was the agent of the owners and had general supervision over said lands to protect their interests. W. B. Eason was the representative of the Gladys-Belle Oil Company. A break occurred in some way in the pipe line of the Lion Oil & Refining Company on the tract of land next to that leased by the Gladys-Belle Oil Company and which was in charge of W. B. Eason as its agent or representative. The oil which escaped from the

pipe line flowed off of the right-of-way of the plaintiff and into a small stream of water which ran across the land in charge of Eason. Eason dammed up the stream and caught the oil in a mud or oil pit which had already been constructed by the Gladys-Belle Oil Company. The oil was diverted from the stream of water to the pit by damming up the stream of water by digging a ditch so that the water and oil would both flow into the mud or oil pit. The mud pit had also been used by Eason to catch waste oil, and there was some oil in it at the time he built the dam across the branch or watercourse for the purpose of catching the oil in controversy in this case. Water is heavier than oil, and it sank to the bottom when the branch or stream was dammed up and its course diverted to the pit. A drain pipe was placed in the pit at about the depth of the branch, and in this way the water was drained out of the mud or oil pit, and the oil which had escaped from the pipe line of the defendants was retained in it. According to the testimony of Eason, he did the work necessary to impound the oil. The plaintiff gave a statutory bond and has possession of the crude oil under it.

At the conclusion of the evidence the court directed a verdict in favor of the plaintiff for the oil in controversy, and the case is here on appeal.

*Goodwin & Goodwin,* for appellant.

*Mahony, Yocum & Saye* and *J. N. Saye,* for appellee.

HART, J., (after stating the facts). The record shows that the pipe line of the plaintiff was broken in some unaccountable way, and the crude oil therein contained flowed off the right-of-way of the plaintiff down a small watercourse on the land occupied and controlled by the defendants, and part of the crude oil was diverted from the watercourse into a mud or oil pit on the land controlled by the defendants.

It is the claim of the defendants that they acquired title to the oil which escaped from the pipe line of the plaintiff and flowed on the land controlled by them.

There is no statute in this State giving the defendants title to the oil under the facts above stated, and we are of the opinion that they could not acquire title at the common law. It is well settled at common law that the title to personal property that is lost is not vested in the finder. 25 C. J. pp. 1136 and 1139; and 17 R. C. L. pp. 1203 and 1206.

This principle of the common law was recognized by this court in *Gentry* v. *Madden*, 3 Ark. 127. In that case it was held that a person finding, taking possession of, and selling a raft of timber stranded upon a sandbar in a navigable river is liable for its conversion. It has also been held that an owner does not lose the title to logs which high water has floated into another's pond. *Walker* v. *Duncan*, (Wis.) 32 N. W. 689. The Supreme Court of California has held that where lumber drifts down a stream and lodges upon adjacent land, the owner may maintain replevin therefor. *Flanders* v. *Lock*, 53 Cal. 20.

It has also been held that upon termination of a lease of land adjoining a parcel owned by a coal miner, upon both of which he has established a culm pile, the miner is not, in case he abandons the culm upon the leased property, and permits its reclamation by the lessor, bound to retain that upon his side of the division line, under penalty of losing title to it if he permits it to drift over onto the former leasehold. *Preston Coal & Improvement Co.* v. *Raven Run Coal Co.*, 200 Fed. 465, 43 L. R. A. (N. S.) 460. The court said that the owner may always recover his property wherever he may find it, and that this elementary principle of law is not affected by the rights given by statutes or common law to the finder of lost property, or to the owner of land onto which the property of another has come. It has also been held that one whose property is borne upon the lands of another by inevitable accident (a flood), without his fault or negligence, may elect, either to abandon the property, in which case he is not liable to the owner of such lands for any injury occasioned by it, or to reclaim it, in which

latter case he must make good to such owner the damages so occasioned. *Sheldon* v. *Sherman,* 42 N. Y. 484.

When the crude oil was taken from the ground and placed in the pipe line of the plaintiff to be carried along its right-of-way to its refinery at El Dorado, it ceased to possess the character of oil in place in the ground and became the personal property of the plaintiff, just like any other personalty owned by it. Although the plaintiff lost possession of the oil when it escaped from its pipe line, yet it retained title in the oil and the right to recover it. Of course, it might have abandoned the oil, and in such case the title to the oil would go to whoever took possession of it.

Numerous instructions were asked by the defendants which were refused by the court. In all of these instructions, however, the defendants based their rights to the possession of the oil under a claim of ownership because they impounded it in their oil pit. They did not request any instructions upon their right to recover from the owner their necessary and reasonable expenses in impounding the oil and preserving it in their oil or mud pit. Hence this question is not an issue raised by the appeal.

The sole question presented by the appeal and argued by the parties is as to which of them was entitled to claim as owner the oil which escaped from the pipe line of the plaintiff and flowed onto the land occupied by the defendants, and which was there impounded by them in a pit dug for that and other purposes.

Counsel for the defendants asserted title under the doctrine announced in *Duvall* v. *White,* (Cal. Dist. Ct. of Appls.) 189 Pac. 324.

Even if it be said that the doctrine laid down in that case is sound and should be followed in this State, we think the facts in the case at bar are essentially different, and do not bring it within the rule there announced. In that case certain oil companies designedly allowed waste oil to escape from their works and flow down a watercourse adjoining their lands. Several

miles below their works, the watercourse emptied into a lake. In consequence of the danger of the oil contaminating the waters of the lake and causing suits to be brought against the oil operators for damages for the injury, the operators made arrangements with a proprietor of land bordering on the lake to construct a dam for the purpose of preventing the waste oil from contaminating the waters of the lake, and, in consideration therefor, agreed to give the landowner all the oil he could thus impound.

An intermediate landowner bordering on the stream undertook to divert the waters of the stream, and this it was ordinarily conceded he had a right to do. The lower landowner sought to enjoin the intermediate landowner from diverting or in any way interfering with the flow of oil or water down to his land so that he might impound it in accordance with the agreement with the oil operators. The decision was in favor of the intermediate landowner, who was the defendant in the action.

In rendering a decision the court proceeded upon two theories. One was that there was an abandonment of the oil by the operators when they intentionally allowed it to escape from their works and to flow down the watercourse without any intention of ever reclaiming it.

In the first place, it may be said that there can be no such thing as an abandonment in favor of a particular individual or for a consideration. Such an act would be a gift or a sale. Hence it is obvious that the operators could not abandon the property and at the same time transfer a right to it to the owners of the land on the lake. Nor could they transfer the title to the owner of the land bordering on the lake with the unqualified right to have it flow down the stream and thus impair the rights of intermediate proprietors to use or divert the waters of the stream just as they had the right to do before the oil was allowed to waste and flow down the stream. It is obvious that the operators could not divest the water rights of intermediate proprietors by allowing

the oil to waste from their plants and flow down the stream for their benefit. This could give them no easement in the stream which they did not possess.

Property is said to be abandoned when it is thrown away or its possession voluntarily forsaken by the owner, in which case it will become the property of the first occupant. When involuntarily lost, or left without hope or expectation of again acquiring it, it becomes the property of the finder, subject to the superior claim of the owner. *Eades* v. *Brazelton,* 22 Ark. 499.

Hence it will be seen that, under the doctrine of the case just cited, when the oil operators in the California case abandoned the waste oil by voluntarily letting it flow into the creek without any intention of reclaiming it, the first owner proprietor would have the right to acquire it.

In the case at bar the undisputed facts show that the oil was not voluntarily allowed to escape, and that the owner asserted its claim to it soon as it ascertained that the oil had escaped and was in the possession of the defendants. There are no facts or circumstances in the record from which it might be inferred that the plaintiff in this case is estopped from claiming the oil. As soon as it was found out that the oil was escaping, the pipe line was repaired, and the plaintiff asserted title to the oil which was impounded by the defendants in their mud pit.

As above stated, the question of compensation to the defendants for impounding the oil was not raised by the pleadings or in any other manner. Hence it is not an issue in the case.

The judgment of the court under the facts most favorable to the defendants was correct, and it will therefore be affirmed.