## DAVENPORT et al. v. RAILROAD COMMIS-SION.

### No. 8440.

Court of Civil Appeals of Texas. Austin.
Dec. 11, 1935.

Rehearing Denied Dec. 31, 1935.

Wynne & Wynne and W. A. Wade, all of Longview, for appellants.

Wm. McCraw, Atty. Gen., and Wm. C. Davis, Joe Sharp, T. F. Morrow, and W. J. Holt, Asst. Attys. Gen., for appellee.

BLAIR, Justice.

On July 26, 1935, appellants, C. A. Davenport and H. W. McCurley, filed with the Tender Board, the authorized agent of the Railroad Commission, their application for a "tender" to move 19,253.92 barrels of oil, which they had picked up in traps constructed and maintained in and along certain creeks adjacent to the Sabine river in Gregg county, Tex. The application was set for hearing on July 31st and reset for August 2d, at which time a full hearing was had. The Tender Board refused to take any action on the application and refused to do so for more than 20 days. Section 9 of H.B. 581, c. 246, Acts 44th Legislature (Vernon's Ann.Civ.St. art. 6066a, § 9), provides: "Whenever an application for a tender is rejected by an authorized agent of the Commission, it shall be the duty of such agent to return one copy of such application to the applicant endorsing thereon all the reasons for such rejection. Such applicant whose tender may be rejected shall have the right to appeal from any action of such agent by filing a petition in the District Court of Travis County, Texas, against the Commission for a review of the ruling of such agent. * * * Any person whose application for tender is not acted on within twenty (20) days from the date of its filing shall have the right of appeal in the same manner above provided for appealing from a rejection of a tender application."

Accordingly, appellants filed their verified petition, alleging, as follows:

"Plaintiffs are the rightful and lawful owners of 19,253.92 barrels of crude oil which they picked up in traps constructed and maintained by them on and adjacent to certain creeks, drains and ditches in Gregg County, Texas, known as Creeks A. B. and C., according to a map and plat of the Gladewater area in the East Texas Oil Field, the said map being on file with the Railroad Commission at its Kilgore Office. Said oil so picked up is waste, abandoned and fugitive oil which escaped in the lawful operation of the many oil wells, loading racks, tank farms and salt water pits in and adjacent to the Gladewater area and on the watershed drained by said creeks, and the apparent sources of the oil before it went into said creek was oil so abandoned by the original owners in the ordinary and lawful operation of their many wells, flow tanks, flow lines and salt water pits and pipe lines, all as appears from the face of the tender application (SW3-61-383) made by these plaintiffs to the Railroad Commission at its Kilgore office on July 26, 1935, for the movement and transportation of said oil under tenders.

"These plaintiffs, as such lawful owners and possessors of said oil, filed their written application, in accordance with the rules of the Railroad Commission and on its printed forms, for tender to move and transport said oil, on July 26, 1935, the original of said application for tender, as well as all copies thereof, yet remain with the Commission at its Kilgore office, and no action whatever has been taken by the said Railroad Commission or its agents * * * although tender application in due and legal form was so filed with the Commission at its Kilgore office on July 26, 1935, and was brought up for hearing before the Tender Board on said date, no action was taken thereon, and the same was set over for hearing on Wednesday, July 31, 1935, at which time plaintiffs appeared and were ready for hearing before the Tender Board, but the Tender Board again passed the same over until Friday, August 2nd, 1935, for hearing, at which time a public hearing was held by the Tender Board on the application for tender and evidence was introduced before the Tender Board, which evidence established the fact, without controversy, that the oil was abandoned, waste and fugitive oil, as hereinbefore alleged, and that the plaintiffs had picked the same up in their traps and had the same confined therein and in their steel storage tanks adjacent thereto. However, the Tender Board failed and refused to act on the application for Tender and have since said time and since July 26, 1935, failed and refused to act thereon, all without any reason whatsoever and without stating in writing on any copy of said tender the reasons for said non-action, and without returning to the plaintiffs any copy of said tender application."

The trial court sustained the general demurrer of the commission to the petition and dismissed the cause, apparently upon the ground that it sought an injunction against the commission, as the administrative agency of the state, to restrain it from interfering with the movement of the oil, and did not allege any facts showing that the oil was not produced nor transported under circumstances which would authorize the state to forfeit the oil under the provisions of H.B. 581 (Vernon's Ann.Civ.St. art. 6066a), which define "unlawful oil" and "unlawful products" and declare same to be nuisances and subject to forfeiture at the suit of the state. In sustaining the general demurrer, the trial court necessarily held that the suit was one for an injunction, and applied the strict rules of construction to the petition, which require that "the material and essential elements which entitle him [petitioner] to relief shall be sufficiently certain to negative every reasonable inference arising upon the facts so stated, from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief." Gillis v. Rosenheimer, 64 Tex. 243; Harding v. W. L. Pearson & Co. (Tex.Com.App.) 48 S. W.(2d) 964. We have reached the conclusion that the trial court erred in sustaining the general demurrer.

■ The suit of appellants is the statutory action authorized by the above-quoted provisions of section 9 of H.B. 581, c. 246, Acts 1935 (Vernon's Ann.Civ.St. art. 6066a, § 9), and to which the injunctive relief sought is only ancillary. The language of the act is plain and unambiguous, and provides that, whenever an application for a tender to move oil is rejected, the agent of the commission shall note on one copy of the tender application his reasons for rejecting same, and shall return it to the applicant, who in turn "shall have the right to appeal * * * for a review of the ruling of such agent" by the district court of Travis county,

Tex. The act also provides that one whose application is not acted upon within 20 days shall have the right of appeal in the same manner and for the same purpose. In the recent case of Davenport v. Railroad Commission, 85 S.W.(2d) 661, 662, this court held that the "rejected application and the indorsements thereon furnish the foundation 'for a review of the ruling of such agent' " by the court. The same character of right of appeal is given where the .application for a tender is not acted upon within 20 days from the date of its filing. Obviously, this provision makes the refusal to act at all within 20 days equivalent to the rejection of the application without any reason. These provisions of the act are mandatory and must be observed by the commission and its agents; and, absent any legal reason for refusing to act within 20 days upon an application for a tender to move oil, the reviewing court must hold such nonaction to be arbitrary and unreasonable, and must overrule the action of the agent and "issue such restraining orders or injunctions as the facts may warrant."

■■ The statute authorizing the appeal from the nonaction of the commission or its agents also provides that "the Court hearing such petition shall have the power to sustain, modify or overrule any action of such agent relative to a tender application and to issue such restraining orders or injunctions as the facts may warrant." Thus the statute itself makes the injunctive relief ancillary to the right to have the action of the agent of the commission overruled. Therefore the distinction between suits purely for injunction and suits for other relief and for injunction as ancillary or adjunctive thereto is to be noted. The petition in a case not purely for injunction need only disclose facts showing that an injunction may be properly granted as incidental relief. Knox v. Askew, 62 Tex.Civ.App. 217, 131 S.W. 230; City of San Marcos v. International & G. N. R. Co. (Tex.Civ.App.) 167 S.W. 292, error denied. The instant action is to overrule the refusal of the commission's agent to issue appellants a tender or the agent's nonaction on the application for the tender to move their oil. The court cannot grant the tender. But the court's judgment overruling the action of the commission refusing to act upon the tender is the authority to move the oil without tender, and the restraining order or injunction authorized by the statute restraining the commission from interfering with the movement of the oil is ancillary to the relief granted in the main suit. Clearly the suit of appellants is the character of action contemplated and authorized by this statute, and their above-quoted pleadings allege all facts necessary to show that appellants were prima facie entitled to the tender applied for. This is true even if it should be held that the strict rules of pleading required in equitable proceedings for injunctive relief only are applicable.

■ The pleadings must be construed in the light of the law applicable to the facts alleged. Appellants alleged that they were the lawful owners of the oil and in detail the method used in picking up the oil from certain creeks and drains, where it was stored, and the amount of the oil. They alleged that the oil was waste, abandoned, and fugitive oil, which had escaped in the lawful operation of many oil wells, loading racks, tank farms, and salt water pits adjacent to the Gladewater oil field and on the watershed drained by the creeks, and that these facts appeared on the face of the application for the tender filed with the commission.

It was further alleged that at the hearing these facts were proved without controversy, but that the commission and its agents refused to pass upon the application for more than 20 days after same was filed. These alleged facts showed appellants to be the owners of the oil under the rule announced by several decisions in this state. The law as developed by our courts with regard to "waste oil" and the "pick-up stations" business is well stated in 31 Tex.Jur. 515, § 9, as follows: "It has been judicially observed that an oil well cannot be operated without a waste of oil about it. At times the amount of oil so wasted reaches a tremendous volume. As this waste oil gradually accumulates upon the surrounding surface, the force of gravity impels it to seek a lower level, and presently large quantities may be found flowing down depressions and watercourses. In a proper case, such escaping oil may be regarded as abandoned property, and, in accordance with settled principles, belongs to the first person who lawfully reduces it to possession. Accordingly, it is not uncommon for landowners or their licensees to erect what are known as 'pick-up stations', designed to capture and save this fugitive oil." See Black Bros. v. State (Tex.Civ.App.) 253 S.W. 576; Humphreys Oil Co. v. Liles (Tex.Civ.

App.) 262 S.W. 1058, affirmed (Tex.Com. App.) 277 S.W. 100; Grayburg Oil Co. v. State (Tex.Civ.App.) 50 S.W.(2d) 355, 357; United North & South Oil Co. v. Mercer (Tex.Civ.App.) 286 S.W. 652; Caldwell-Guadalupe Pick-Up Stations v. Gregg (Tex.Civ.App.) 276 S.W. 342; Yates v. Grayburg Oil Co. (Tex.Civ.App.) 38 S.W.(2d) 414; Crosson v. Lion Oil & Ref. Co., 169 Ark. 561, 275 S.W. 899, 42 A.L.R. 574, 577; State v. Black Bros., 116 Tex. 615, 297 S.W. 213, 53 A.L.R. 1181; Guffey v. Stroud (Tex.Com.App.) 16 S.W. (2d) 527, 64 A.L.R. 730, 734.

■■ Thus our courts have declared the business of picking up waste oil a legal one. They have also recognized that there is necessarily a large amount of legitimate waste oil incident to production in all fields and from each well. Appellants' petition clearly alleges that the oil they own and propose to move is that which "escaped in the lawful operation of the many wells, loading racks, tank farms and pits adjacent to the Gladewater oil field, and which flowed down the creeks and drains into their traps or pick-up stations." The rules and regulations of the commission require that those engaged in capturing abandoned, waste, or fugitive oil shall make a report to the commission, which "shall contain the information as to the apparent source of the oil before it moved into such creeks, drains, etc." The petition alleged that the apparent source of the oil in suit was abandoned, waste, or fugitive oil which had apparently escaped from lawful operations on the watershed draining the Gladewater field and area, thence into appellants' pick-up stations. The petition therefore alleged all facts necessary to show that appellants were the legal owners of the oil and entitled to the tender, and necessarily negatives "every reasonable inference arising on the facts so stated." One conducting a business which the law declares legal does not, in order to assert his rights under such business, have to also negative the fact that he has not conducted his business in an unlawful manner. All that the statutes require is that an applicant for a tender to move oil show a legal source of his oil. As to the source of their oil, appellants alleged that it was oil which had escaped "in the lawful operation of the many oil wells, loading racks, tank farms and pits in and adjacent to the Gladewater" oil field. Appellants as first takers of the waste or abandoned oil are "in no sense 'producing' such oil as contemplated with-

in the terms of a mineral lease." Grayburg Oil Co. v. State, supra. And, while they come within the statutes requiring a tender to move oil, they cannot be required to show, as is required of those engaged in producing or refining oil, the well from which the oil was produced. To require the operators of pick-up stations to show the well from which their oil was produced would necessarily require the impossible, and would deprive them of the right to pursue this lawful enterprise; and, as has been held in other jurisdictions, "sound public policy requires that those who add to the public wealth by redeeming waste [oil] should be encouraged rather than hindered." Standard Oil Co. v. Kinnebrew, 155 La. 1009, 99 So. 802, 803.

In the case of Lacy v. Railroad Commission (D.C.) 10 F.Supp. 990, a statutory three-judge court recently construed our tender statutes and the regulations of the commission applicable to waste oil, stating that in a proper case the court would hold that an order refusing a tender because applicant could not "show the lease from which his [waste] oil came," was arbitrary as requiring the impossible of applicant, whose oil was "waste oil, lost in lawful operations from many leases," and picked up in traps. The court say: "The power which the Commission exercises in making the regulations and orders under them is not a power to prevent commerce in oil, or to make it difficult or impossible for legal oil to move. It is a power only to prevent violation of the laws against illegal production. It does not extend to absolutely preventing the movement in commerce of oil not illegally produced. The Commission's regulations and its practices must have a reasonable relation to the power it has a right to exert. The action it took here is not reasonable."

■ But appellee suggests that the business of operating traps or pick-up stations for waste oil is readily susceptible of fraud and collusion between unlawful producers, refiners, and transporters, on the one hand, and the pick-up station operators, on the other hand. No such facts are alleged in the instant suit. If the facts had shown such fraud and collusion, the agent of the commission could have refused the tender on that ground, and such fraud and collusion, if alleged and proved, would constitute a proper defense to this suit. Such fraud and collusion would not vest title in

appellants as the first taker of the oil, and they would not be entitled to a tender to move it. This would be analogous to the cases where oil escapes by accident from the pipes, tanks, or pits of the producer or owner. In such instances the first taker in the pick-up station does not become the legal owner of the oil. It is the property of the one who lost it through accident, and he may recover it from the pick-up station operator. 18 R.C.L. 1202; 42 A. L.R. 578; Crosson v. Lion Oil & Ref. Co., 169 Ark. 561, 275 S.W. 899, 42 A.L.R. 574. Obviously, if the commission and Attorney General discover fraud or collusion to move unlawful oil as between unlawful producers, refiners, or transporters and pick-up station operators, they have full power and authority to institute forfeiture proceedings as authorized by the provisions of said H.B. 581.

The judgment of the trial court sustaining the general demurrer and dismissing the suit is reversed, and the cause is remanded for trial on the facts.

Reversed and remanded.