**RAILROAD COMMISSION OF TEXAS et al. v. MORGAN.**

**No. 8461.**

Court of Civil Appeals of Texas. Austin.
March 11, 1936.

Wm. McCraw, Atty. Gen., and W. J. Holt, Joe Sharp, Wm. C. Davis, T. F.

Morrow, Wm. Madden Hill, and Harry S. Pollard, Asst. Attys. Gen., for appellants.

Felts, Wheeler & Wheeler, of Austin, and Saye & Saye, of Longview, for appellee.

BAUGH, Justice.

Suit was filed by Morgan, doing business as the Prescott Oil Company, against the Railroad Commission, as an appeal from its order refusing him a permit or tender to move 14,580 barrels of crude oil captured by him in his pick-up station on Rabbit creek in Gregg county, Tex. He alleged that he had captured said oil as fugitive or abandoned oil flowing down said creek; that he did not know the origin of such oil, but believed that it was waste oil which had "escaped from various wells and pipe lines on property lying adjacent to said creek above the pick-up station above mentioned"; that but for his action in capturing same it would have been wasted; that ·upon filing his application with the commission to move said oil, on the forms prescribed by it, the commission had rejected same without stating thereon any reasons for such rejection, as required of it by section 9, Acts 1935, p. 624, c. 246, Vernon's Ann.Civ.St. art. 6066a, § 9; that such failure and refusal by the commission was arbitrary; and prayed for an injunction to restrain the commission from interfering with his sale or removal of said oil, and to compel the commission to issue to him such permit.

The commission defended on the ground, among others, that the oil in question was unlawful oil and not entitled to be moved or sold. The state intervened, through the Attorney General, and sought confiscation and sale of such oil, under section 10 of the statute above cited (Vernon's Ann.Civ. St. art. 6066a, § 10), on the ground that it was "unlawful oil." Trial was had upon the merits to the court without a jury, the injunction granted as prayed for against the commission, and the state was denied any relief on its plea of intervention. The state and the Railroad Commission have appealed. No findings of fact nor conclusions of law were applied for nor filed, but the court in its judgment, after enumerating undisputed facts, recites "that plaintiff's said application for tender was by the Railroad Commission of Texas refused without the assignment of any rea-

son therefor, and the court is of the opinion and so finds that said action was on its face arbitrary and without reason in law and should be overruled," etc.

In view of the conclusions reached we find it unnecessary to pass upon and determine the first two contentions made by appellants, that is, whether plaintiff's petition was sufficient to authorize the relief sought, in that it failed to negative any supposable ground on which the Commission could properly have denied the permit; and, second, that the burden rested upon appellee, as plaintiff below, to show that he had himself in all things complied with the laws and regulations of the commission so as to entitle him to sell or move the oil in question. This for the reason that, assuming that such pleadings were sufficient, or admitting that the burden was upon the commission to show, in the light of the duty imposed upon it by section 9 of the act above cited, that the oil was "unlawful oil," where it had failed or refused to state its reasons for rejection on the application, we think that the commission and the state did show that the oil here involved was "unlawful oil" within the purview of the statute and the rules of the commission and was not, therefore, entitled to be sold and removed as sought by appellee.

█ Apparently the trial court took the view, and construed our former opinions as holding, that where the tender board has rejected an application for a tender without assigning any reason therefor, as it is required to do by section 9 of the act above cited, such failure or refusal constitutes arbitrary action on its part, and entitles the applicant to a tender as a matter of right. See Davenport v. Railroad Commission (Tex.Civ.App.) 85 S.W. (2d) 661; Davenport & McCurley v. Railroad Commission (Tex.Civ.App.) 89 S.W. (2d) 1006; Railroad Commission v. Patton (Tex.Civ.App.) 89 S.W.(2d) 1010; Davenport v. Railroad Commission (Tex.Civ. App.) 91 S.W.(2d) 399. Our former opinions on this question, however, cannot be so construed. Undoubtedly, in view of the mandatory provisions of the statute, the failure or refusal of the tender board to comply with the plain provisions of the law does constitute arbitrary action on its part. And when an applicant has duly executed and filed his application with the tender board, properly sworn to on the form prescribed by the commission, and containing the information therein required; he has made a prima facie showing of his right to a tender for his oil; and if, in a hearing thereon on appeal to the district court under section 9 of the act, no evidence is offered by the commission to show the contrary, he is entitled to a permit. That is our construction of the law and is what we have heretofore held. But that is not the case here presented. It is obvious that a mere failure of an agency of the commission to discharge the duties imposed by law upon it cannot in and of itself grant an applicant, who has himself violated the conservation laws and valid rules of the commission, immunity from its penalties, or give to him any right to move his oil if in fact and in law it be "unlawful oil" as defined by the act in question. The effect of the statute, where the applicant makes proper showing before the tender board and it fails to give any reason for its refusal of a permit, is to cast upon the commission or the state the burden of showing that the oil involved is "unlawful oil."

We consider then what the record discloses in the instant case. Section 1 (d) of Act 1935, c. 246, above cited, and known as H. B. No. 581 (Vernon's Ann.Civ.St. art. 6066a, § 1 (d), defines "unlawful oil" as follows: " 'Unlawful oil,' as that term is used herein, shall include oil which has been produced within the State of Texas from any well or wells in excess of the amount allowed by any order of the Commission, and oil which has been produced within said State in violation of any law of said State or in violation of any order of the Commission, and shall include any oil transported in violation of any such law or in violation of any such order."

A similar definition of "unlawful products" is made in section 1 (e) of said act (Vernon's Ann.Civ.St. art. 6066a, § 1(e).

Section 1 (g) of the act (Vernon's Ann. Civ.St. art. 6066a, § 1(g) prohibits the approval or registration by an agent of the commission of a tender for the transportation of any such unlawful oil or unlawful products.

Section 10, acts 1935, p. 180, c. 76, Vernon's Ann.Civ.St. art. 6049e, § 10, in part provides:

"Sec. 10. The purchase, acquisition, or sale, or the transportation, refining, pro-

cessing, or handling in any other way, of crude petroleum oil or natural gas, produced in whole or in part in violation of any oil or gas conservation Statute of this State or of any rule, regulation or order of the Commission thereunder, is hereby prohibited.

"The purchase, acquisition, or sale, or the transportation, refining, processing, or handling in any other way, of any product of crude petroleum oil or natural gas which product is derived in whole or in part from any crude petroleum oil or natural gas or any product of either, which crude petroleum oil or natural gas or product was in whole or in part produced, purchased, acquired, sold, transported, refined, processed, or handled in any other way, in violation of any oil or gas conservation Statute of this State, or of any rule, regulation or order of the Commission thereunder, is hereby prohibited."

■ There were also introduced in evidence upon the trial duly promulgated rules of the Railroad Commission regulating pick-up stations and reclamation plants. These rules need not be set out here, but in substance contained, among others, the following provisions and inhibitions:

1. That such plants must be built, constructed, and operated in conformity with the rules and regulations of the commission.

2. That operators of same must make daily and monthly reports to the commission showing the quantity and character of oil acquired, its source, or apparent source, the quantity of oil sold, transferred, or delivered before being treated and such oil sold, transferred, or delivered after it has been treated, all of which reports must be made under oath.

3. Denying to operators of such plants authority to take into their possession any such unmerchantable oil without first obtaining a permit from the commission to do so; and then only upon furnishing to the commission the information required in such rule.

4. Requiring the applicant to identify the source from which such waste oil came; and further, if that cannot be done, and such oil creates a fire hazard or threatens stream pollution, then that such oil be burned under the supervision of the Railroad Commission.

5. Prohibiting the removal of any such captured oil unless its source can be identified.

The validity of these rules is not attacked by appellee. The testimony of witnesses for the commission, and of appellee himself, showed that he operated his pick-up station and reclamation plant without any permit from the commission; that he had not made any of the reports to the commission required by its rules; that he had treated said oil after its capture so as to remove therefrom foreign substances and to improve the grade or specific gravity of same; and that after doing so he had transported some from his reclamation plant through pipe lines to a storage tank situated some two or three miles away without any permit from the commission to do so. There was also evidence to the effect that the oil in storage, which he sought by this suit to move, was of higher specific gravity than that which he claims to have placed in said storage tank.

Under these facts and circumstances it seems clear that the oil in question falls within the statutory definition of "unlawful oil" or "unlawful products," for the sale or removal of which the law itself prohibits the issuance of a tender. It is manifest, therefore, that appellee can acquire no right to sell or transport oil shown by the evidence to have been "unlawful oil," by a mere failure of the agents of the commission to discharge the duties imposed upon them by law with reference thereto. The injunction appealed from was therefore improperly granted.

■ The state, as intervener, insists that because said oil was shown to have been "unlawful oil" its should have been ordered confiscated and sold as provided for in section 10 of H. B. No. 581, above cited (Vernon's Ann.Civ.St. art. 6066a, § 10), and that therefore we should so render judgment here. We cannot say, however, that the case has been fully developed on this issue, nor determine as a matter of law from the evidence in the record whether the oil in storage, and sought to be moved by appellee in this suit, is the same oil or the same character of oil as that transported by him from his reclamation plant to the storage tank where he now claims that it is located. That being true, we think it best to reverse

1134

the cause for another trial upon the right of the state to confiscate it.

The injunction granted by the trial court is accordingly dissolved, and the cause reversed and remanded for another trial.

Reversed and remanded.