## BEAVER RECLAMATION OIL CO. v. RAILROAD COMMISSION OF TEXAS.
### No. 8544; Motion No. 8790.

Court of Civil Appeals of Texas. Austin.
Oct. 27, 1937.

Rehearing Overruled Dec. 31, 1937.

Opinion Filed Jan. 4, 1938.

W. A. Wade, of Longview, D. M. Doyle, of Fort Worth, Langston Smith, of Austin, and Hiner & Pannill, of Houston, for appellant.

Wm. McCraw, Atty. Gen., and Dick Holt and Harry S. Pollard, Asst. Attys. Gen., for appellee.

McCLENDON, Chief Justice.

Appellant brought this suit against the Railroad Commission under section 9, article 6066a, Vernon's Ann.Civ.St., Acts 1935, p. 624, c. 246, to set aside an order of the Tender Board of the Commission refusing an application for a tender covering 36,462 barrels of oil which Davenport & McCurley (predecessors in title of appellant) and appellant had picked up in traps adjacent to creeks A, B, and C which drained a portion of the East Texas oil field in Gregg county, including the town of Gladewater. The

appeal is from a judgment for defendant in a trial to the court without a jury.

The trial court in its findings sustained the action of the Tender Board upon eight grounds, the first seven of which were indorsed by the Tender Board upon the application, and the eighth was affirmatively plead in appellee's answer. These grounds were:

(1) The tender application was not properly made out, in that it does not appear on its face how the oil was to be transported and by whom.

(2) The tender application covers approximately 6,000 barrels of oil more than the testimony shows to be located in or at "traps adjacent to creeks A, B and C."

(3) That the tender is for oil of a different nature from the oil in the traps.

(4) That daily reports were not filed in accordance with order of 4/3/1935.

(5) That Railroad Commission had not issued a permit for picking up the oil.

(6) That the oil is illegal, in that it was transported without a tender.

(7) That the oil was stored in earthen pits, in violation of the conservation laws.

(8) The oil was "illegal" and "unlawful" in that it was produced in excess of the "allowable."

The appeal is predicated upon assignments of error which challenge the sufficiency of the evidence to support the judgment upon any of these grounds. We will consider these grounds in the above order.

### Ground 1.

■ The tender form (SW–3) prescribed by the Commission does not call for information as to "how or by whom the oil is to be transported"; the relevant blanks reading:.

"To Be Delivered To

| Filled in 'Unknown.' (Next Person to receive oil) | at | Filled in 'Unknown.' (Place of Delivery to Next Person)" |
|---|---|---|

Article 6066a, § 1 (g), Vernon's Ann.Civ. St. reads:

"The word 'tender' shall mean a permit or certificate of clearance for the transportation of oil or products approved and issued or registered under the authority of the Commission.

"The form of any tender and the application therefor shall be prescribed by order of the Commission and shall show the name and address of the shipper or person tendering oil or products for transportation, name and address of the transporting agency (where such order requires the transporter to be designated), quantity and true classification of each commodity authorized to be transported, place or places where delivery will be made to the transporting agency, and such other related data as may be prescribed by order of the Commission. A tender shall bear a date and serial number, shall show its expiration date, and shall be executed by the agent or agents authorized by the Commission to deny, approve or register tenders. No tender shall be approved or registered by such agent authorizing the shipment or transportation of any unlawful oil or unlawful product."

Instructions printed on the back of form SW—3 read in part: "A tender on Form SW—3 may be made whether the destination or consignee is known or unknown at the time of application and may cover transportation to more than one consignee. Such a tender may cover deliveries on a forecast to meet the requirements of a shipper, consignee, or consignees. In the event a Tender on Form SW—3 is registered with the Commission to cover future deliveries on a forecast the Commission through its duly authorized agent shall indicate on such Tender the time when same shall expire and it shall not be necessary for a registered copy of the Tender to accompany each shipment; provided the transporter carrying the oil described in the Tender has received a registered copy of the Tender before accepting such oil for transportation."

Moreover, the testimony showed that the general practice of the Commission was to approve tenders prepared in this regard as this one. If more specific information were desired in these particulars, appellant should have been given an opportunity to furnish it. Otherwise, the application should not have been rejected upon this ground.

### Ground 2.

■ Nor do we think the court should have sustained refusal of tender in toto because the application covered more oil than was actually found to be in the pits. The amount covered by the application should have been reduced to the actual amount of oil so found. This we think follows from article 6066a, § 9, which gives to "the Court * * * the power" (inter alia) to "modify * * * any action of such agent relative to a tender application and to issue

such restraining orders or injunctions as the facts may warrant." See, also, in this connection, Lacy v. Railroad Comm., D.C., 10 F.Supp. 990.

## Ground 3.

As regards classification or quality of the oil, the application stated: "This oil is abandoned and fugitive oil, picked up from the surface waters of creeks A, B and C, said creeks being shown on map on file with the Railroad Commission, Kilgore, Texas. The apparent source thereof before it went into said creeks is waste and escaped oil from loading racks, pipe line breaks, pit breaks, overflow and waste from numerous refineries, salt-water pits and the like in the Gladewater area, and from the watershed drained by said creeks A, B and C, all as shown by the map of the area on file with the Railroad Commission."

This ground is based upon testimony of one of the Commission's agents to the effect that the oil measured by him in the several pits showed specific gravities ranging from 18 to 28.9, and was therefore not what is commonly known as "East Texas crude oil," although it contained all the elements of crude oil. The area drained into the traps contained in addition to oil wells a number of refineries and pipe lines, leakage or escape from which would naturally be expected to contain various grades of oil and oil products, resulting in admixtures of varying specific gravities. There was no material variation between the oil described in the application as "pick-up oil" from the stated apparent sources and that described by the above witness.

## Ground 4.

The facts with reference to the failure to file daily reports are on all fours with those in Railroad Commission v. Lacy, Tex. Civ.App., 100 S.W.2d 118. We sustain the assignments predicated upon this ground upon the authority of that case.

## Ground 5.

We also sustain the assignments predicated upon this ground. The facts were: Davenport & McCurley had made application for a permit to operate the pick-up station in 1935. The application complied in every substantial respect with the rules of the Commission. Although there was no affirmative action upon it by the Commission or Tender Board, applicants were told by the chief enforcement officer of the Commission to go ahead and pick up the waste oil on the creeks in question and make report thereof. This was done, tenders were applied for and refused, and appeal was taken to the courts, resulting in setting aside the refusal orders. Davenport v. Railroad Commission, Tex.Civ.App., 85 S.W.2d 661, and Id., Tex.Civ.App., 89 S.W. 2d 1006 error dismissed. Neither of these prior refusal orders was based upon failure to obtain a permit. Under these circumstances we think the burden clearly rested upon the Commission to show that appellant or its predecessors in title were not entitled to have the application for permit granted. If the permit had been refused by the Commission, its order thereon could not be collaterally attacked. But not having acted upon the application, and having acquiesced in operation under it, some affirmative showing to the effect that the Commission would have been warranted in refusing the application was essential as a basis for refusal of a tender of oil picked up under the application.

## Ground 6.

This ground is predicated upon a finding by the trial court that 8,766 barrels of oil were moved from the traps to the La Neve property situated upon the lease and then placed in steel storage. Appellee does not controvert the following résumé of the uncontradicted testimony in this regard in appellant's brief: "8766 barrels of oil were moved from trap A to the La Neve pit on appellant's lease to keep it from flood waters of the Sabine River, which flood waters were then within 21 inches of the top of the levees around said trap. That this removal was merely to another part of the premises covered by appellant's lease. That prior to moving this oil from said traps to said La Neve pit, notice had been given to appellant by the Game Fish & Oyster Commission to move such oil, and that such oil was moved under the order of the District Court of the United States in a suit then pending in said court between appellant and Railroad Commission, and that the removal of said oil was not for the purpose of placing the same in commerce."

We hold that these facts do not constitute "transportation" of the oil within the meaning of Vernon's Ann.Civ.St. art. 6066a, § 1 (d). See Miller v. State, 115 Tex.Cr.R. 388, 27 S.W.2d 803, and cited supporting authorities.

## Ground 7.

The facts do not, in our opinion, support the finding that the oil was stored

in earthen pits in violation of the conservation laws. The oil was caught or picked up in earthen traps. The reason it was not transferred to steel storage was this: "Davenport and· McCurley had provided 20,000 barrels of steel storage sufficient to store oil picked up in traps A, B and C from month to month. The uncontradicted evidence showed that the defendant Railroad Commission had arbitrarily refused tenders on all oil picked up by Davenport and McCurley, appellant's predecessors in title, and had forced them to bring suit for tenders for such oil and while such suits were pending additional oil trapped by Davenport and McCurley had to remain in such traps. That but for such arbitrary acts of said Railroad Commission oil so trapped and kept in such steel storage would have been sold and oil subsequently trapped would have been placed in such steel storage as soon as recovered." (Quoted from unchallenged statement in appellant's brief).

### Ground 8.

As stated, this ground was not noted on the application by the Tender Board in refusing the application. As announced by this court in Railroad Commission v. Morgan, 92 S.W.2d 1131, the burden in such case is cast upon the Commission to show that the oil was "illegal"; in this instance produced in excess of the allowable. This burden clearly was not met. The pertinent facts briefly stated were:

The records of the Commission showed that the full amount of oil produced within the allowable during the period in question from the area embraced in the watershed of these creeks had been accounted for. It was shown without controversy that this area contained a large number of producing oil wells and several refineries; and was traversed by a number of pipe lines. The Commission was aware that a large quantity of oil was escaping and flowing into these creeks, and through its agents had made repeated, diligent, and persistent efforts to ascertain the source from which it came. Like efforts were made by appellant and its predecessors in title, all, however, to no avail. The evidence shows that it was impossible to ascertain the source of the oil so as, in case it was produced in excess of the allowable, to charge it back to the producer. There was no claim of any fraud or collusion. Clearly, we think, the Commission failed to meet the burden which rested upon it.

The case appears to have been fully developed on all material issues; therefore, the trial court's judgment is reversed and the cause remanded to the trial court, with instructions to permit appellant to amend its application, and thereupon to grant the appropriate relief under Vernon's Ann. Civ. St. art. 6066a, § 9.

Reversed and remanded, with instructions.

### On Appellee's Motion for Rehearing.

In view of appellee's statement in its motion to the effect that until the decision of this court was rendered it was not aware that it was required to controvert statements in appellant's brief, we deem it proper to direct attention to Court of Civil Appeals Rule 31 with reference to briefing. This rule requires the appellant to make "a clear and accurate statement of the record bearing upon the respective propositions." The rule further provides: "If the statement from the record thus made is not distinctly challenged by the opposing party, it may be accepted by the court as correct."

This is a salutary rule. Its purpose is to relieve the court of the burden of checking unchallenged statements from the record in appellant's brief. The necessity for the rule increases with the increase in volume of records, especially of statements of facts in question and answer form. The statement of facts in the instant case is almost 400 pages long.

Statements in briefs are made by counsel upon their professional responsibility as officers of court; and, independently of this rule, should be accepted as correct where not challenged.

Appellee's brief further asserts that its failure to traverse statements in appellant's brief "was occasioned solely through our desire to achieve brevity." Such objective is highly commendable, but is secondary in importance to compliance with the above rule. In presenting a case to the appellate court, it should always be held in mind that the controlling facts in a case (where issues on appeal are based thereon) are of prime importance; from which it follows that appellants' briefs primarily should reflect an accurate picture of the case factually. The above rule requires appellant to present such picture, and requires appellee to point out wherein the picture is inaccurate.

Appellee's brief contains 31 typewritten pages. The first 12 pages are

devoted to an elaborate résumé of the pleadings. The remainder of the brief consists in the main of propositions and arguments upon the law of the case, with citations of, and quotations from, authorities. The statements under the several propositions consist largely of references to the pleadings. References to the statement of facts are quite meager and do not controvert the statement in appellant's brief, which we accepted in our opinion as uncontroverted.

The case is brought to this court solely upon assignments of error which question the sufficiency of the evidence to support the several fact findings of the trial court and the judgment thereon. No question of pleading is involved. The facts, therefore, are of prime importance.

We are confident this court was fully justified in accepting the uncontroverted statements in appellant's brief.

Independently of this conclusion, however, a re-examination of the case, in the light of appellee's motion, leads to the conclusion that the presentation of the case in our original opinion is correct, in so far as the controlling facts and issues are concerned. If there are any inaccuracies they are not important.

A large portion of the motion is devoted to the proposition that we were in error in holding that the burden of proof was cast upon the Commission as regards ground 8, because this ground was not indorsed upon the application as a basis for refusal of tender. This proposition is predicated upon the well-established rule that orders and rulings of the Commission are presumptively valid, and the burden rests upon one attacking them to establish their invalidity. Our holding in no way contravenes this salutary rule, but is predicated upon the statute which requires the Commission, in refusing applications for tender, to indorse thereon its reasons therefor. The rule still obtains that the action of the Commission in refusing the tender is presumptively valid. But this presumption extends only to the grounds upon which it acted. If it relies upon other grounds to uphold its order when attacked, the burden is upon it to establish them. This was the holding of this court in the cited case of Railroad Comm. v. Morgan, 92 S.W.2d 1131; and was also the effect of our holdings in the following prior decisions: Davenport v. Railroad Comm., Tex.Civ.App., 91 S.W.2d 399; Id., Tex.Civ.App., 89 S.W.2d 1006, error dis-

missed; Id., Tex.Civ.App., 85 S.W.2d 661; Railroad Comm. v. Patton, Tex.Civ.App., 89 S.W.2d 1010.

We are clear in the view that the legislative purpose in requiring the Commission to indorse the reasons for its refusal of such applications was intended, at least prima facie, to constitute such reasons the basis of any attack on the order. We can conceive of no other purpose of this statutory requirement.

The motion is overruled.

Overruled.