THE RAILROAD COMMISSION OF TEXAS ET AL V. BEAVER
RECLAMATION OIL COMPANY.

No. 7384. Decided June 1, 1938.
Rehearing overruled October 26, 1938.
(117 S. W., 2d Series, 52; 120 S. W., 2d Series, 423.)

28

*William McCraw,* Attorney General, *W. J. Holt, Earl Street,* and *Harry S. Pollard,* Assistants Attorney General, for plaintiffs in error.

The plaintiff, the Beaver Reclamation Oil Company, did not

prove, either before the Tender Board of the Railroad Commission or in the trial court, that the oil for which the plaintiff applied for a tender was legal crude oil or legal products of crude oil; therefore the tender board properly rejected its application for tender, and the trial court properly denied the relief sought by it, and it was error for the Court of Civil Appeals to reverse that judgment with instructions to the trial court to order the tender to issue. Magnolia Pet. Co. v. Railroad Commission, 128 Texas 189, 96 S. W. (2d) 275; Davenport v. Railroad Commission, 91 S. W. (2d) 399; Stewart v. Smith, 126 Texas 292, 83 S. W. (2d) 945.

*William Pannill, Hiner & Pannill,* of Fort Worth, *Langston Smith,* of Austin, *D. M. Doyle* and *Wm. A. Wade,* both of Longview, for defendant in error.

Tender cases are neither civil cases nor are they to be tried as other civil cases. They are summary in their nature; the proceedings are summary; they are purely statutory and the Supreme Court is without jurisdiction to hear same. Mingus v. Wadley, 115 Texas 551, 285 S. W. 1084; Employers Liability Assur. Corp. v. Young County Lumber Co., 122 Texas 647, 64 S. W. (2d) 339.

MR. JUDGE GERMAN, of the Commission of Appeals, delivered the opinion for the Court.

Defendant in error, Beaver Reclamation Oil Company, on December 6, 1935, filed application with the East Texas Tender Board of. the Railroad Commission at Kilgore, Texas,. for a tender permit which would authorize it to transport and move into commerce 36,462 barrels of crude oil. The application contained the following statement:

"The above mentioned oil is now in storage at Traps Adjacent to Creeks A, B & C, (Walker and Turner Leases, Dillard Survey, Gregg County).

"This oil is abandoned and fugitive oil picked up from the surface waters of Creeks A, B and C, said creeks being shown on map on file with the Railroad Commission, Kilgore, Texas. The apparent source thereof before it went into said creeks is waste and escaped oil from loading racks, pipe line breaks, pit breaks, overflow and waste from numerous refineries, salt water pits and the like in the Gladewater area, and from the watershed drained by said Creeks A, B and C, all as shown by the map of the area on file with the Railroad Commission. This

oil was picked up from 7 A. M. July 26th, 1935, to 7 A. M. December 1st, 1935."

On December 23, 1935, a regular hearing was held before the Tender Board at Kilgore, and the tender was refused. Seven reasons were endorsed by the board upon the back of the application, as provided by Section 9 of Article 6066a of Vernon's Annotated Civil Statutes (Acts 1935, 44th Leg. Reg. Sess., chap. 246, p. 631). The Beaver Reclamation Oil Company will be designated plaintiff.

The present suit was instituted by plaintiff against the Railroad Commission of Texas in the District Court of Travis County, as provided by Section 9 of the Act mentioned, and was brought to test the validity and reasonableness of the order of the Tender Board denying the tender. The trial court sustained the action of the Tender Board. The court filed elaborate findings of fact and in addition to the seven reasons given by the Tender Board in refusing the tender, the court gave the additional reason that "the oil was 'illegal' and 'unlawful' in that it was produced in excess of the allowable." The substance of the eight reasons given for refusing the application is set out in the opinion of the Court of Civil Appeals, 112 S. W. (2d) 765, and need not be copied here. The Court of Civil Appeals held that none of these reasons were sustained by the evidence, and reversed and remanded the cause with instructions that the plaintiff be granted a tender for the actual amount of oil found to be in storage, which was some six thousand barrels less than the amount stated in the application. It is unnecessary to discuss all of the questions presented here.

On June 28, 1934, the Railroad Commission of Texas promulgated a general order, which among other things provided as follows:

"9. IT IS FURTHER ORDERED by the Commission: Any person picking up, reclaiming or salvaging any 'wash-in' oil, creek oil, pit oil, or 'pipe line break' oil shall apply to the Commission for a permit so to do before picking up, salvaging or reclaiming the same; and shall follow and be governed by the procedure above set forth for the handling of tank bottoms. Applications for permits to pick up or reclaim wash-in oil shall state the name of the lease, the number of well or wells in which such oil was used for wash purposes, the name of the operator so using the same for such purposes, and the date on which it was used. The applications shall also show the source of the oil, giving the name of the lease, the number of

the well or wells, from which produced, the date produced, the name of the operator, and the date acquired. Such oil shall be charged against the allowable of the well or wells in which used in the same manner as above provided for tank bottoms.

"Applications for permits to pick up creek oil shall state the location of the oil sought to be picked up, the name of the creek, if known, and the source of such oil, giving the name of the lease, and the number of the well from which the same escaped, together with the name of the operator of such lease and well; such application shall also state, if known, the date on which such oil escaped from such creek, the cause of the escape.

"Applications to pick up salvage or reclaim pit oil shall describe and identify the location of the pit or pits to be drained, and the name of the person or persons, partnership or association of persons or corporation in whose possession or under whose control the pit oil, or other substance containing crude petroleum is to be found; and such application shall also describe the well or wells from which such pit oil or other fluid or substance containing crude petroleum was produced, the name of the lease on which such well, or wells may be located, and the name of the owner, operator or manager thereof, with sufficient definiteness and clarity as to enable the Railroad Commission to charge to such well or to such well or wells the crude petroleum reclaimed and/or extracted therefrom, and/or utilized, and/or marketed.

"Applications to reclaim pipe line break oil shall state the location of such oil, the location of the break in the pipe line causing the leakage of such oil, the name of the pipe line, the owner thereof, and the date of the break. Pipe line break oil shall be charged against the present and future storage of the pipe line from which the same has escaped.".

This general order of the Commission has never been attacked by suit in the District Court of Travis County, as is provided by Section 8 of Article 6049c Vernon's Annotated Civil Statutes.

One of the findings made by the Tender Board in this instance and endorsed on the application was as follows:

"The Board further finds that the Railroad Commission of Texas has not issued a permit to the Beaver Reclamation Oil Company or their predecessors in business, McCurley and Davenport, of any kind or nature authorizing such Reclamation Company to pick up any so called creek oil, pit oil, or pipe line break oil, nor has the Beaver Reclamation Oil Company or its predecessors in business, McCurley and Davenport Reclamation

Company, ever made application to the Railroad Commission of Texas for a permit to pick up any so called creek oil, pit oil, or pipe line break oil, or any oil of a different kind, and applicants have in no way complied with, or made an effort to comply with, the order of the Railroad Commission dated June 28, 1934, which order requires the filing of an application with the Railroad Commission of Texas for a permit to pick up such oil before the same is actually picked up, salvaged, or reclaimed."

In its pleadings in the District Court plaintiff did not pretend that either it or its so-called predecessors, Davenport & McCurley, had ever obtained a permit to engage in the business of picking up abandoned oil, nor did it plead any facts upon which it attempted to predicate a waiver or estoppel as concerns a permit to do this business. The only plea in this regard was that such requirement was unreasonable and arbitrary, and attempted to require an impossible thing, in that said order, among other things, provided "that before such permit could be issued to pick up any oil, the applicant must show the source of the oil, giving the name of the lease, the number of the well or wells from which produced, the name of the operator and the date acquired, and that such oil should be charged against the allowable of the well or wells from which produced."

Among other things the trial court found as follows:

"That during said period of time between July 26th, 1935, and December 1st, 1935, neither the partnership of McCurley and Davenport, nor the plaintiff corporation had applied for, nor received, nor had there been issued to either of them by the Railroad Commission of Texas, a certificate or permit authorizing either said partnership or the plaintiff corporation to construct, maintain or engage in the business of operating a reclamation plant or pickup station for the purpose of reclaiming, treating or capturing oil or products of oil or a mixture thereof, commonly known as waste, abandoned, pickup, creek or fugitive oil."

In the Court of Civil Appeals plaintiff made no contention that it had ever applied for a permit to engage in the business of picking up abandoned oil, nor did it make any contention that the Commission had waived such requirement or was estopped. It merely attacked the unreasonableness of some of the requirements which the Commission in its order of June 28, 1933, declared should be met before a permit could be granted.

The Beaver Reclamation Oil Company was chartered under the laws of the State of Delaware, October 12, 1935, with a capital stock of $2000. Its incorporators were all residents of the State of Delaware. Although its charter powers are numerous, it was given no power to engage in the business of trapping and picking up abandoned oil. Minutes of the first meeting of the board of directors of said company held October 30, 1935, show that McCurley & Davenport and C. A. Davenport submitted a proposition to sell certain physical properties to the corporation in consideration of common stock of the value of $2,000.00, and this proposition was accepted. No formal transfer of any kind is shown. On November 26, 1935, the corporation made application for a permit to do business in the State of Texas. Said application did not ask for a permit to do in this State all of the business which the corporation by its charter was authorized to do. Permit to do business in the State was issued the same day and it does not authorize the corporation to engage in the business of trapping and picking up abandoned oil, nor does it enumerate a power to which such a business would be naturally or necessarily incidental.

The Court of Civil Appeals disposed of the fifth reason given by the Tender Board and the trial court for refusing the tender, which reason in substance was that the Railroad Commission had never issued a permit for picking up the oil, in this language:

"We also sustain the assignments predicated upon this ground. The facts were: Davenport & McCurley had made application for a permit to operate the pick-up station in 1935. The application complied in every substantial respect with the rules of the Commission. Although there was no affirmative action upon it by the Commission or Tender Board, applicants were told by the chief enforcement officer of the Commission to go ahead and pick up the waste oil on the creeks in question and make report thereof. This was done, tenders were applied for and refused, and appeal was taken to the courts, resulting in setting aside the refusal orders. Davenport v. Railroad Commission, Texas Civ. App., 85 S. W. (2d) 661, and Id., Texas Civ. App. 89 S. W. (2d) 1006 error dismissed. Neither of these prior refusal orders was based upon failure to obtain a permit. Under these circumstances we think the burden clearly rested upon the Commission to show that appellant or its predecessors in title were not entitled to have the application for permit granted. If the permit had been refused by the Commission, its order thereon could not be collaterally attacked. But not

having acted upon the application, and having acquiesced in operation under it, some affirmative showing to the effect that the Commission would have been warranted in refusing the application was essential as a basis for refusal of a tender of oil picked up under the application."

■■ We observe that both the Tender Board and the trial court found that neither Davenport & McCurley nor plaintiff had ever applied for a permit to engage in the business of picking up abandoned oil. This finding was not attacked in the Court of Civil Appeals. On the contrary, plaintiff in its pleading took the position that the failure to make application for permit or to obtain permit constituted no legal justification for refusal of the tender, for the reason that neither plaintiff nor its successors could have obtained a permit if they had made application, because the order of the Commission required them to do what they contended was an impossible thing. No formal application for permit is shown in the record, nor does the testimony show with certainty that any was filed. But if it were filed, then according to plaintiff's allegations it could not comply with the order of the Commission, and the Commission was therefore not required to act thereon. The Court of Civil Appeals was, therefore, not justified in overruling the action of the trial court in refusing the tender on the ground that plaintiff had no permit and had never made application for one. We are not willing to accede to the contention that the Commission may annul its general orders merely by acquiescence or waiver. While it is apparent, therefore, that Davenport & McCurley had no enforceable right to a permit, we need not so decide, for the reason that it is obvious that if they had such a right it did not pass to the plaintiff corporation—even if it were assignable. While Davenport & McCurley are referred to as predecessors in title of the plaintiff, nevertheless there must have been some reason for creating this corporation and it is not in position to ask the courts to disregard the corporate fiction and claim right to a permit simply because Davenport & McCurley picked up part of the oil. The application for tender shows that plaintiff itself picked up some of the oil, although it had no permit to do so.

■ It is of course definitely settled that the general orders of the Railroad Commission are presumed to be reasonable and valid until attacked in a direct suit for that purpose, as provided by statute. It is also definitely settled that the validity and reasonableness of a general order cannot be attacked in a collateral proceeding such as is this suit. Railroad Commission

v. Marathon Oil Co., 89 S. W. (2d) 517 (writ ref.); Turnbow v. Barnsdall Oil Co., 99 S. W. (2d) 1096 (writ ref.).

The Railroad Commission had power to require a permit as a condition to engaging in the business of picking up or reclaiming abandoned oil. Art. 6029, Sec. 9, Vernon's Ann. Civil Statutes. It is presumed that the order of June 28, 1934, prescribing such requirement is valid. It has never been attacked in the manner required by statute. It is further presumed that the provisions of said order of which plaintiff complains are reasonable until they are attacked in a direct proceeding. It follows that for this very sufficient reason alone plaintiff was not entitled to the tender.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the district court is affirmed.

Opinion adopted by the Supreme Court, June 1, 1938.

ON MOTION FOR REHEARING.

On original hearing we gave due consideration to the motion of defendant in error to dismiss this cause for want of jurisdiction, but did not deem it necessary to write an opinion thereon. In motion for rehearing this matter is urged with considerable force, and we briefly state our views on the question.

Section 9 of Article 6066a, Vernon's Civil Statutes, provides that if application for a tender is rejected, the applicant may file a petition in the District Court of Travis County for review of the action of the agent of the Railroad Commission in rejecting same. The power is given the district court to sustain, modify or overrule any action of the agent of the Commission relative to said application, and to grant appropriate relief. The section then concludes with the following provision: "Any person dissatisfied with the decision of the district court may appeal to the Court of Civil Appeals."

The contention of defendant in error is that as the right sought to be enforced in this instance was a special one, created by statute, it was within the power of the Legislature to designate special tribunals for its determination, and that therefore the jurisdiction of the District Court of Travis County and of the Court of Civil Appeals is final. We agree that the designation of the District Court of Travis County as the original tribunal for testing the validity of the order of the Tender Board is exclusive. Alpha Petroleum Company v.

Terrell, et al., 122 Texas 257, 59 S. W. (2d) 364, 372, and authorities there cited. We do not agree, however, that by the quoted provision, which allows an appeal to the Court of Civil Appeals, the Legislature intended that the action on appeal should continue to be a special proceeding, and the jurisdiction of the Court of Civil Appeals should be final. It is our conclusion that as the proceeding was a special one, the exclusive original jurisdiction of which was in Travis County, the Legislature intended by the quoted provision to remove all doubt as to such an action being appealable, and intended that when same was appealed to the Court of Civil Appeals it should be governed by the general statutes with reference to jurisdiction of the Supreme Court. Otherwise we think the Legislature would have expressly provided that the jurisdiction of the Court of Civil Appeals should be final. As the Court of Civil Appeals had jurisdiction of the cause, in the absence of a provision making the jurisdiction of that court final, it comes squarely within the purview of Article 1728 of the Revised Statutes of 1925. That article provides that the Supreme Court shall have appellate jurisdiction, co-extensive with the limits of the State, extending to all questions of law arising in the following cases, when same have been brought to the Courts of Civil Appeals from final judgments of trial courts: Among others, those in which the Railroad Commission is a party. Said article expressly excludes those cases in which the jurisdiction of the Courts of Civil Appeals is made final by statute. In this instance, the jurisdiction of the Court of Civil Appeals was not made final, and it necessarily follows, we think, that because of two or more provisions of Article 1728 the Supreme Court had appellate jurisdiction.

The motion for rehearing by defendant in error is in all respects overruled.

Opinion adopted by the Supreme Court, October 26, 1938.