## RAILROAD COMMISSION OF TEXAS et al. v. BURNHAM.

### No. 8296.

Court of Civil Appeals of Texas. Austin.

Feb. 16, 1935.

Wm. McCraw, Atty. Gen., and W. J. Holt and Archie D. Gray, Asst. Attys. Gen., for appellant Railroad Commission of Texas.

H. P. Smead, of Longview, W. B. Harrell, of Dallas, Bailey Shepperd, of Longview, and Felts & Wheeler, of Austin, for appellee.

BLAIR, Justice.

Appellee, G. H. Burnham, instituted this proceeding against appellants, the Railroad Commission and its members, seeking to enjoin them from enforcing, as against a certain product of crude petroleum oil, about 70,000 barrels of fuel oil owned by appellee, the provisions of an order of the Commission, dated December 5, 1934, and effective December 10, 1934, which required, among other things, that "every person owning or possessing" such product on the effective date of the order, who desired to transport same, to file an inventory containing certain information, and to file an application for a tender to transport, containing certain information. Appellee alleged, and on the hearing for a temporary injunction, offered proof which tended to show, that he had purchased the fuel oil in September, 1934, in good faith, paying a valuable consideration therefor; that at that time the fuel oil was a lawful article of commerce, subject to be sold and transported; and that at that time he was not required to ascertain any of the facts attempted to be required by the said order, and particularly was he not required to show the source of the crude oil from which the fuel oil was refined. That he did not file an inventory as required by the order, because he and the agents of the Commission in charge of the matter construed the order to require him to show the source of the crude oil from which the fuel oil had been refined, which information he did not have and was not required to have at the time he purchased the fuel oil. That appellee filed an application for a tender to transport about 40,000 of the about 70,000 barrels of fuel oil owned and stored by him in a certain earthen tank on the effective day of the order, stating therein that he had sold that amount and desired to transport it to the person named. That the application for tender was set for hearing, but before being reached, the agents of the Commission in charge of the matter refused the tender, stating afterwards to the attorney for appellee, who was present for the hearing, that the Commission or tender board had refused all applications for tender of products where the source of the crude oil from which they were refined was not shown. Apparently, the trial court granted the temporary injunction upon the conclusion that this evidence showed the Commission and its agents to have acted arbitrarily in refusing appellee's application for a tender to transport his fuel oil without a hearing or opportunity to present the necessary proof required by the order for such tender; and upon the further conclusion that if the fact finding order of December 5, 1934, under the construction placed upon it by appellee and the Commission and its agents, required appellee to show the source of the crude oil from which his fuel oil was refined before the tender to transport would be issued, it required of him the impossible, because he did not have and was not required to have such information at the time he purchased the fuel oil.

We do not construe the fact-finding order of December 5, 1934, to require appellee to furnish either in the inventory or the application for tender to transport his fuel oil, the source of the crude oil from which the fuel oil was refined. The order defines "crude oil" and the various products or by-products of same, one of which is fuel oil. It deals with several classes of persons engaged in producing and refining crude oil, in refining crude oil products, and with "persons owning or possessing" such products or by-products of crude oil on the effective date of the order who desire to transport same; and the material portions of the order relating to persons owning and possessing such products of crude oil, and the information required to be given by them in the inventory and the application for a tender to transport, read as follows:

"(a) Name and address of the person tendering such product or products;

"(b) Name and address of the transporting agency;

"(c) Amount and kind of product or products tendered;

"(d) Place or places where delivery will be made to the transporting agency;

"(e) Location and ownership of the storage or refinery tanks or other receptacles containing or to contain the product or products so tendered;

"(f) * * *

"(g) If the product or products being tendered had been produced and were in storage on the effective date of this order, it shall be necessary to show the existence of such tendered product or products at the effective date of this order by the sworn inventory hereinafter referred to. * * *

"IV. Each applicant for a permit who relies upon * * * a product * * * in storage on the effective date of this order as the source of the tendered product or products, or who tenders a product which itself was in storage on the effective date of this order, must file with the Railroad Commission at its office designated for that purpose within ten days from the effective date of this order a written inventory under oath showing as of the effective date of this order the amount of * * * products and each of them, classifying each product by its true name, and giving the location and ownership of the tanks or other receptacles containing same. Said inventory shall be registered with the Commission and given a serial number, and the permits issued against such inventory shall identify the products or oil withdrawn by referring to such serial number."

Whether the provisions of section (f) of paragraph I of the order require the first refiner of the crude oil to show in his application for tender to transport products the source of the crude oil from which products in storage on December 10, 1934, were refined, is not material, because such initial refiner is required to furnish such information under House Bill 99, upon order of the Commission. But it is clear from the language quoted that the order does not require other "persons owning or possessing" refined products of crude oil in storage on the effective date of the order to show the source of the crude oil from which their products were refined. That is, any owner or refiner of crude oil products after they have been sold and delivered by the first or initial refinery of the crude oil does not have to show, in the application for tender to transport such products, the source of the crude oil from which such products were refined. And under the above-quoted provisions of the order the application for the tender to transport need only state the name and address of the person tendering such product or products; the name and address of the transporting agency; the amount and kind of product or products tendered; the place or places where delivery will be made to the transporting agency; and the location and ownership of the storage or refinery tanks or other receptacles containing or to contain the product or products so tendered.

It is also clear from the language of the entire order that it does not require any person or refiner, including the first or initial refinery, owning and possessing refined products of crude oil on the effective date of the order, to show in the inventory required to be filed the source of the crude oil from which such products were refined. The order only requires that such an inventory be in writing and under oath; that it show the amount of such product or products and each of them, classifying each such product by its true name as defined in the order, and give the location and ownership of the tanks or other receptacles containing same. This is all the information the order requires to be shown in an inventory. Such information is of great value to the Commission in the administration of the proration laws, and particularly House Bill 99, effective March 9, 1934 (Vernon's Ann. Civ. St. art. 6049c, § 5), because the information required to be given in the inventory and the application for tender to transport the refined product or products of crude oil, together with the records required by House Bill 99 by producers and the first or initial refiners of crude oil, were, as shown by the evidence, of great aid to the Commission and its agents in the enforcement of the proration laws, and particularly in determining whether crude oil had been and was being produced, transported, or refined in any oil field in excess of the allowables under the proration statutes of this state (title 102 [Vernon's Ann. Civ. St.]). By its terms the order confines its provisions as to transportation of products to "any oil field in the State of Texas, or from any refinery or other plant" in any oil field, thus affording a means whereby the orderly transportation of all legally produced crude oil and its refined products may be transported from any oil field in this state. So, for these reasons the order bears a reasonable relation to the statutes above referred to, which have as their purpose the orderly production, transportation, and refining of crude oil in the field of production.

And, in the instant case, if appellee had filed with the Commission or its designated agents an inventory containing the information herein held to be required by the order, and his application for a tender to transport the fuel oil containing the information herein held to be required by the order, it would have been the duty of the Commission or its agents to have issued the tender or permit;

provided, of course, that the Commission, in the exercise of its administrative powers, may refuse the tender, if it discovers that the applicant is not the owner of the product, or is not making the application in good faith, or is attempting a palpable subterfuge, evasion, or circumvention of the statutes. The Commission has no right to refuse such tender on products of crude oil owned or possessed by persons, other than to the first refiners of the crude oil, on the effective date of the order, because it may discover that the crude oil from which the products were refined was produced in excess of allowables and in violation of the proration statutes, or in violation of some rule or regulation of the Commission. No statute or authorized order of the Commission made the products of crude oil contraband at the time the order of December 5, 1934, was promulgated; and it necessarily follows that upon a person, owning or possessing such refined product of crude oil in storage on the effective date of the order, filing the inventory and making the application for tender herein held to be required by the order, the Commission or its agents must issue the tender even though the crude oil from which the products were refined had been produced or refined in the first instance in violation of the proration statutes, or rules and orders of the Commission. Such will not be the case after the effective date of Senate Bill 21, effective December 25, 1934, and the rules and regulations of the Commission pursuant thereto, because such statute makes products of crude oil which were produced and refined after the effective date of the statute, in violation of such statute or orders of the Commission, contraband. Acts 43rd Leg. 3d Called Sess. c. 64, p. 120 (Vernon's Ann. Civ. St. art. 6049c, § 14; art. 6036 and note).

And while appellee "does not contend that the Commission may not pass such orders as may be necessary for it to ascertain facts to enable it to properly administer the Conservation Laws of this State," still he does contend that if the fact finding order of December 5, 1934, be given the construction placed upon it by himself and the Commission and its agents charged with its enforcement, as requiring him to show the source of the crude oil from which his product was refined, the order would require the impossible of him, and would be void upon the several constitutional grounds stated. But these matters need not be discussed here, because we have construed the order not to require appellee to show either in the inventory or the application for tender the source of the crude oil from which his fuel oil was refined.

We have concluded, however, that since the order requires appellee to file an inventory containing the information aforementioned; and that since appellee did not file or offer to file such an inventory, or any inventory, the trial court erred in granting the temporary injunction appealed from. At least the trial court should have required appellee to have filed in this cause the inventory and application for a tender to transport his fuel oil on the forms required by the Commission, under oath, and containing the aforementioned information as required by the order. As above stated, this information is a valuable aid to the Commission in the enforcement of the proration laws, and furnishes a means by which the Commission may require the orderly transportation of all crude oil and refined products thereof from any oil field in Texas. Appellee may have shown an excuse for not filing the inventory in the time required by the order, but he has shown no excuse for not filing it at all.

We have also reached the conclusion that the trial court erred in refusing the seasonable application of the appellants to stay or suspend the temporary injunction granted pending this appeal from such order. Such conclusion was indicated by our granting on January 28, 1935, a temporary injunction herein, restraining appellee from moving or transporting the fuel oil involved pending the final disposition of this appeal. It is manifest, for the reasons stated in the opinion of this court in the recent case of Railroad Commission v. George Real, 80 S.W.(2d) 494, that the subject-matter of the litigation would have been destroyed if appellee had been permitted to move or transport his fuel oil under the temporary injunction granted by the trial court. Such being the facts, this court had the right to protect its own jurisdiction and preserve the status quo of the subject-matter of the appeal pending the final determination of the appeal.

It follows from our above conclusions that the temporary injunction granted by the trial court will be dissolved; and likewise the temporary injunction granted by this court will be dissolved, and the cause remanded.

Temporary injunction dissolved; cause remanded.