## RAILROAD COMMISSION et al. v. GOODSON et al.
### No. 8326.

Court of Civil Appeals of Texas. Austin.

March 29, 1935.

280

Wm. McCraw, Atty. Gen., and Archie D. Gray, and T. F. Morrow, Asst. Attys. Gen., for appellants.

Upchurch & Hooper and Willis E. Gresham, all of Austin, for appellees.

## McCLENDON, Chief Justice.

Appeal by the Railroad Commission, its members, and its chief enforcement officer and deputy supervisor in the East Texas oil field, from an interlocutory order temporarily enjoining appellants from enforcing, as to 105,941 barrels of fuel oil situated in the East Texas oil field, the tender order of the commission, dated December 5, 1934, and enjoining certain railroad companies from refusing to accept said products for shipment. The suit was originally brought by S. A. Goodson, as owner of the products; later five other parties (refineries or owners of refineries) joined as parties plaintiff.

The petition alleges that inventories were filed by the several refinery plaintiffs in their own name as owners within the time prescribed by the December 5th order. We do not find these inventories in the record, but for our present purposes we will assume that they were filed and in full compliance with the order. The several refineries filed tenders on form SW–4 on the following dates:

Gilmer Oil Company, December 20, 1934 (23,500 barrels). The blank following "Said product was or will be produced from" was filled in as follows: "February to October 1934, because of lack of other storage and market and shipper now desires to move same as requested by Railroad Commission of Texas, the fuel oil covered by this tender will be used for fuel oil purposes in East Texas Field district and will be so reported."

Alton Refining Company, January 26, 1935 (15,000 barrels); said blank being filled: "East Texas Crude—No tender required prior to December 10, 1934."

John Peters Company, January 14, 1935 (30,000 barrels); said blank being filled: "January 1st to November 1st, 1934, placed in pits because of lack of other storage and market and will be used for fuel oil purposes only and will be so reported."

Goodson Refining Company, January 26, 1935 (27,000 barrels); said blank being filled: "East Texas Crude—No tender required prior to December 10, 1934."

E. E. Day, January 4, 1935 (35,000 barrels); said blank being filled: "From July 1st to October 1934, because of lack of market and other storage and it is now the desire of shipper to move same as requested by Railroad Commission of Texas and the fuel oil covered by this tender will be used for fuel oil purposes in the East Texas Field area and will be so reported."

There was no effort to show in the trial that any of these products were produced from legal oil, or that the several refineries had legal crude oil tenders to support the inventories and SW–4 tenders. The Railroad Commission's agent who made a checking of the inventories and tenders was unable to find records either of the refineries or of the Railroad Commission which would support these inventories and tenders. The products being in the hands of the original processors on December 10, 1934, it was necessary that there be a showing that the products were processed from legal crude oil, or had been purchased as products in good faith prior to December 10, 1934. Such showing being wholly absent, the original refineries were clearly not entitled to the tenders or to the injunctive relief prayed for.

The suit is predicated in the main upon the proposition that S. A. Goodson was the owner of the products, having in good

faith purchased them from the several refineries prior to December 10, 1934, and that they were held in the several refineries' tanks subject to his order. Therefore it is urged that he was entitled to tenders and the injunctive relief, regardless of whether the products were processed from illegal crude.

It was contended in this regard that the original inventories and tenders were filed by the several refineries upon the theory that the December 5, 1934, order required that they file them. Subsequently, on several dates not important to note, inventories and tenders were filed in the name of S. A. Goodson. These were all filed after December 20, 1934, the time limit for the filing of such inventories.

The allegation that Goodson was a bona fide purchaser and owner of the products prior to December 10, 1934, is not sustained by the record. On January 26, 1935, S. A. Goodson filed an inventory in which he alleged as to the several products involved: "That he entered into an agreement and made a deal whereby he was to purchase from certain refineries and individuals, the products of Crude Oil which they had on hand on December 10, 1934, contingent upon their obtaining a legal Tender from the Railroad Commission or an order from some court of competent jurisdiction which would allow him to move same in a lawful manner."

On the same date affidavits were filed by the several refineries or their representatives, in each of which the agreement between them, respectively, and S. A. Goodson was stated in the following language: "Affiant further says that these same products were sold to Mr. S. A. Goodson prior to December 10, 1934, and that they were to be delivered to him when, and if, a Tender could be obtained from the Railroad Commission permitting the movement of such products, or upon obtaining an order from some court which would authorize disposal of same."

S. A. Goodson admitted on the stand that his affidavit and those of the refineries represented the agreement between them.

Independently of other circumstances in the record which strongly tend to support collusion and lack of bona fides, the contract as evidenced by these affidavits and testimony was at the most only a contingent sale; the contingency being the procurement of an approved tender from the Railroad Commission or a court order dispensing with such tender. Under the express terms of the contract, no obligation whatever rested upon S. A. Goodson, unless and until the several refineries had procured such tenders or court orders, one of the essential prerequisites for which was a showing by them that either as original processors the products were processed from legal oil or that they were bona fide purchasers thereof in the processed state. We are unable to conceive under what theory it can be contended that these contracts placed S. A. Goodson in any different position from that of the refineries, from which he claims to have purchased. If this character of transaction is to be upheld as placing the product in the hands of a bona fide purchaser, it would render the conservation laws in this regard virtually unenforceable and afford a ready means for their evasion. The principles announced in the several recent opinions handed down by this court with reference to the December 5, 1934, order, its construction and application, apply in this case. Railroad Commission v. Burnham, 80 S.W.(2d) 496; Railroad Commission v. Archer, 80 S.W.(2d) 506; Railroad Commission v. Tyler Texas Oil & Refining Co., 80 S.W.(2d) 500; Railroad Commission v. Linzie Refining Co., 80 S.W. (2d) 504; Railroad Commission v. Bradshaw, 80 S.W.(2d) 508; Railroad Commission v. Primrose Petroleum Co., 80 S.W.(2d) 509.

An effort was made to show by one of appellees' witnesses that this character of sale was usual and customary in the oil field. The most that the evidence showed in regard to such custom was that, where the holder of the products could not show valid supporting tenders therefor, which would entitle him to an approved shipping tender under form SW-4, neither seller nor purchaser was willing to assume the risk of making anything but a contingent contract which would be binding upon neither party, unless approved tender was obtained from the Railroad Commission. Such custom could not change the legal effect of the contract as being only a contingent one, and could not serve as a basis for creating the status of bona fide purchaser of a product in the processed state.

Aside from the above holding, the office of the temporary injunction, as pointed out in Railroad Commission v. Real (Tex. Civ. App.) 80 S.W.(2d) 494, is to preserve the status quo of the res in litigation pending trial upon the merits; and that in this character of cases the status quo is that created by the Railroad Commission's order. Alpha Petroleum Co. v. Railroad Commission (Tex. Civ. App.) 59 S.W.(2d) 374 (error dismissed). To issue a temporary injunction under such

circumstances amounts to a final disposition of the subject-matter of the suit; and, while we upheld a temporary injunction in the Primrose Petroleum case above, we did so on the ground that the record in that case conclusively showed that the appellee company was entitled as a matter of law to the tender, and the Railroad Commission had therefore no discretion to refuse it. Where there is any doubt as to the proper exercise of the Railroad Commission's discretion, as where the record presents a bona fide controverted fact issue, a temporary injunction we think, is improper; and relief should not be granted except upon a plenary trial upon the merits. We are clear in the view that, independently of the first above holding, the case presented by the record before us falls within this class, and the temporary injunction was improperly granted.

The order appealed from is set aside, the trial court's and this court's temporary injunctions are dissolved, and the cause remanded.

Order set aside; temporary injunctions dissolved; cause remanded.