**HERCULES OIL CO. v. THOMPSON et al.**
**GEORGE C. PETERSON CO. v. SAME.**
**Nos. 507, 508.**

District Court, W. D. Texas, Austin Division.
April 29, 1935.

F. W. Fischer, of Tyler, Tex., for complainants Hercules Oil Co. and George C. Peterson Co.

William McCraw, Atty. Gen., W. J. Holt and William C. Davis, Asst. Attys. Gen., and Claude Pollard, of Austin, Tex. (Maurice Cheek, of Fort Worth, Tex., of counsel), for defendant railroad companies.

G. B. Ross, of Galveston, Tex., for G. C. & S. F. Ry. Co.

R. H. Kelley, of Houston, Tex., for trustees, International-Great Northern Railroad Company.

Mastin G. White, of Washington, D. C., for Atty. Gen. of the United States.

HUTCHESON, Circuit Judge, and WEST and KENNERLY, District Judges.

PER CURIAM.

These suits, like Melton's, involve the tender or permit rules and regulations of the Commission. As Melton does, these plaintiffs claim that they acquired the products of crude oil involved in the suits before December 5, when the regulations complained of were first adopted. As Melton does, they claim that the regulations and the statutes operate to deprive them of their property without due process of law. The same general claim is made in these suits by defendants as was made in Melton's, that plaintiffs are not really the owners of these products; that their purchase of them was a device by which the processer is seeking to evade the rules and statutes, and ship his illegal products. There is a special defense in these cases, that at the suit of the state against McMurray and others, including these plaintiffs, a receiver was appointed. That the products in question really belong to McMurray and allied interests which processed them, and are now in the custody of the receiver in the state suit.

The Hercules Case involves several hundred thousand barrels of oil. The Peterson Case only a small amount. This because under the protection of an injunction issued in a suit in the state court brought by Tyler Texas Refining Company at McMurray's instance in order to deliver the Peterson gasoline, much of that gasoline was moved, leaving remaining only 12,500 barrels. It was claimed by the defendants that the suit involving that gasoline had been finally dismissed, and that this dismissal was a bar to any further suit. In addition to the points in the Melton Suit that the statutes, and the rules, orders, and actions of the Commission are violative of the Fourteenth Amendment, it is claimed in these suits that they are a burden on interstate commerce, and specifically on the movement of plaintiff's oil in that commerce. Fur-

ther, these suits, unlike Melton's suit, are not brought primarily against state officers, and incidentally against railroad companies; they are brought primarily against the railroad companies seeking a mandatory injunction against them requiring them to take and transport their oil. It is claimed that they refused to take it because of the state statutes and regulations, and because of the federal act prohibiting the movement of illegally produced oil in interstate commerce, known as the Connally Act (15 USCA § 715 et seq.). The state officers are made parties defendant in only an incidental way, upon allegations that the statutes, their rules and orders, and the threatened action under them, prevent the railroad companies from taking plaintiffs' oil. The bills, however, do ask for an interlocutory injunction against state officers suspending or restraining the enforcement, operation, and execution of state statutes, and of the orders of the Commission. Because such application was presented to the District Judge, he called two other judges to his assistance, and the issues in the cases were presented before all the judges.

On the hearing of the cases, because of the very grave question whether the suits in any of their aspects were cognizable by the three judges, it was agreed that the whole suits should be heard, that the cause of action against the railroads should be regarded as submitted to the District Judge, that against the state officers, to the three-judge court. Amazon Petroleum Corporation v. Railroad Commission (D. C.) 5 F. Supp. 639; Pittsburgh & W. Va. Ry. Co. v. United States (D. C.) 41 F.(2d) 806.

As in Melton's Case, we do not find it necessary to determine the precise limits within which the state may act to prohibit movements in interstate commerce, or the precise limits within which the Railroad Commission may be confined in making regulations to carry out the statutory purpose to abate the nuisance of illegally producing oil. We think it may not be doubted that the state has the right to prohibit the production of oil to prevent waste, because such production is in the nature of a public nuisance, and that it may make and authorize all reasonable regulations to bring about the abatement

of this nuisance, extending to preventing movement in commerce of illegally produced oil and its products. We think it perfectly reasonable for the state, as a part of a preventive plan, to thoroughly abate the nuisance, to forbid the transportation, either interstate or intrastate, of oil illegally produced, and that a prohibition against the movement of such oil and its products in commerce is unquestionably valid. Atlas Pipe Line Co. v. Sterling (D. C.) 4 F. Supp. 441. The federal cases supporting the right to close as nuisances places where illegal liquor is sold are ample authority for the act of the Legislature prohibiting the transportation or handling of illegally produced oil, or its products, and the prohibition against the illegal production of oil has been in force for some time.

As to the products in question, it cannot be claimed that the statutes have retroactive operation. It is most clear that they are the products of illegally produced oil. As to such products, at least in the absence of clear proof of ownership acquired in them for value and with real bona fides, there is no violation of constitutional law in prohibiting their movement. Railroad Commission v. Burnham (Tex. Civ. App.) 80 S.W.(2d) 496; State v. Blue Diamond Oil Corporation (Tex. Civ. App.) 76 S.W.(2d) 852. The evidence leaves no room for doubt that their contract did not vest any right in either Peterson or Hercules to move this oil. Their rights under their contracts vested only if and when the oil could be moved. Under these circumstances, they stand in McMurray's shoes. Railroad Commission v. Goodson (Tex. Civ. App.) 81 S.W.(2d) 279. Under these circumstances, they stand as he would stand if, coming into a court of equity, he asked an injunction to prevent the state from interfering with his further handling of illegally produced oil. If he did come, we think the short answer to his claim would be that no case for equity was shown. Courts of equity do not issue their writs to aid law violators, to assist them in evading valid laws. Railroad Commission v. Archer (Tex. Civ. App.) 80 S.W.(2d) 506. Especially will federal equity courts not make their writs available to such suitors against state laws.

The injunction prayed for against the state officials will be denied.