## GRISWOLD v. THE PRESIDENT OF THE UNITED STATES.

### No. 7993.

Circuit Court of Appeals, Fifth Circuit.

March 30, 1936.

Otis W. Bullock and Howard B. Warren, both of Shreveport, La., for appellant.

Ben F. Roberts, U. S. Atty., of Shreveport, La., Richard H. Hill, Sp. Asst. to U. S. Atty. Gen., and John Dickinson, Atty., Department of Justice, of Washington, D. C., for the President of the United States.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This is an appeal from an interlocutory injunction issued under the authority of the Connally Act of February 22, 1935, c. 18, 49 Stat. 30 (15 U.S.C.A. §§ 715–715*l*).

It is not claimed that the facts were not rightly found nor, if the law under which it was issued is valid, that the discretion was abused in issuing the temporary order. No claim is made to a reversal on the balancing of conveniences or the abuse of discretion, as in Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972.

The attack is a frontal one on the validity of the act itself and the regulations issued under its authority. It is therefore insisted that the consideration of this interlocutory appeal is governed, not by the rule of. Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L.Ed. 1385, 88 A.L.R. 744, Alabama v. United States, 279 U.S. 229, 231, 49 S.Ct. 266, 73 L.Ed. 675, Butler v. D. A. Schulte, Inc. (C.C.A.) 67 F.(2d) 632, but by that of Meccano, Ltd., v. John Wanamaker, 253 U.S. 136, 40 S.Ct. 463, 64 L.Ed. 822; that, where on the pleadings and the face of the record the case is without merit, this court should say so and order its dismissal.

We cannot agree with appellant that this appeal presents a case of that kind. We think it plain that the act validly authorizes District Courts, upon allegation and proof that persons are dealing, or about to deal, interstate in contraband oil, to enjoin them from doing so. The bill in this case alleged, and the court on sufficient evidence found, that appellant had been dealing, and that he was planning to deal, interstate in contraband oil, and it enjoined him from doing so.

We cannot agree with appellant's argument that the act under which the injunction issued is an invasion of state powers, that it is not a true regulation of interstate commerce, but an attempt by indirection to control the production and marketing of a natural product of a state. We cannot agree with the subtleties of his view, that· the act abdicates the power of Congress over interstate commerce and delegates it to the states. Nor can we agree with the implications of his argument that contraband oil, that is, oil made forfeit to the state and prohibited by state law from being moved or transported, is a lawful product, and therefore beyond the power of Congress to exclude from interstate commerce. These arguments overlook, they disregard, the dominant, the controlling, fact that the act, though passed in aid of state purposes and powers, deals with, and only with, commerce interstate. It takes up where state power ends, and by supplementing state legislation it makes completely effective the general will of the people of the state of Texas, expressed in its conservation laws. Congress has validly done this same thing in connection with the transportation into dry states, of intoxicating liquor, Clark Distilling Co. v. Western Maryland Ry. Co., 242 U.S. 311, 37 S.Ct. 180, 61 . L.Ed. 326, L.R.A. 1917B, 1218, Ann.Cas.1917B, 845; into states which prohibit such goods, of goods made by convict labor, Whitfield v. State of Ohio, 56 S.Ct. 532, 80 L.Ed. ——. It has done it as to the transportation out of states of birds or wild game killed there contrary to its laws, Bogle v. White (C.C.A.) 61 F.(2d) 930; and as to motorcars stolen in violation of state laws, Brooks v. United States, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699, 37 A.L.R. 1407.

In Ryan v. Amazon Petroleum Corporation (C.C.A.) 71 F.(2d) 1, on the assumption that there were no infirmities in the particular act under examination, we on full consideration held that Congress could validly prohibit the transportation in interstate commerce of oil which state laws have made contraband. We approve and reaffirm that holding. We think appellant's arguments disregard the verities, the realities of the situation as it exists in law and in fact. These are: That, in the interest of conserving its greatly valuable and irreplaceable natural

resources of oil, the state of Texas has undertaken to make, and has made, complete provision against its wasteful production and handling. Those laws prohibit the purchase, acquisition or sale, the transportation, the refining, processing, or handling in any way of "unlawful oil." [1] Those laws make contraband and forfeit to the state oil produced in violation of them. By its laws, in order to more surely prevent waste, the state has undertaken minutely to regulate and control the production, handling, and marketing of oil within the state. In addition, for their effective administrative application and enforcement, it has charged the Commission with the duty, and has given it power, to adopt regulations having the force of law to make the statutes effective. These laws and regulations extend to, they control, the production, the movement, and the marketing of contraband or unlawful oils, and contraband or unlawful products of oil.

The Forty-Fourth Legislature, Acts 1935, p. 624, c. 246, Vernon's Ann.Civ.St. of Texas, art. 6066a, has particularly made comprehensive provision on these points. In subdivisions (d) and (e) of section 1 of that article, "Unlawful Oil" and "Unlawful Products" are defined:

"(d) 'Unlawful oil,' as that term is used herein, shall include oil which has been produced within the State of Texas from any well or wells in excess of the amount allowed by any order of the Commission, and oil which has been produced within said State in violation of any law of said State or in violation of any order of the Commission, and shall include any oil transported in violation of any such law or in violation of any such order.

"(e) 'Unlawful product' shall be construed to include any product any part of which was processed or derived in whole or in part from unlawful oil, or from any product of unlawful oil, or from unlawful gas, or which is transported in violation of any order of the Commission or in violation of any law of Texas."

Subdivision (g) defines a tender as "a permit or certificate of clearance for the transportation of oil or products approved and issued or registered under the authority of the Commission." It declares that the commission shall prescribe the form of the tender and application, and what it shall contain and show and the agents who shall provide it. It concludes: "No tender shall be approved or registered by such agent authorizing the shipment or transportation of any unlawful oil or unlawful product."

Section 2 governs transportation under tenders, and manifests and declares that oil or products shipped or transported in violation of the section shall be deemed to be unlawful oil or products.

Section 3 provides for the arrest of persons unlawfully transporting oil, and section 4, for penalties. Section 5 provides for the promulgation of regulations by the Commission. Section 9 provides for court review of the action on application for tenders. Section 10 (a) provides: "All unlawful oil and unlawful products, regardless of the date of production or manufacture thereof, are hereby declared to be a nuisance and shall be forfeited to the State as hereinafter provided," and subdivisions (b), (c), and (d) of that section provide for the filing of suits in rem against unlawful oil or unlawful products, to enforce the forfeiture.

The paramount public interest of the state in the conservation of these natural resources, the right of the Legislature to enact reasonable laws having reasonable relation to that end, and of the Commission under the authority of those laws to make regulations to carry them into effect,

---

[1] Article 6049e, Vernon's Ann.Civ.St., Acts 1935, 44th Leg. c. 76, p. 180, in part provides:

Section 10. "The purchase, acquisition, or sale, or the transportation, refining, processing, or handling in any other way, of crude petroleum oil or natural gas, produced in whole or in part in violation of any oil or gas conservation Statute of this State or of any rule, regulation or order of the Commission thereunder, is hereby prohibited.

"The purchase, acquisition, or sale, or the transportation, refining, processing, or handling in any other way, of any product of crude petroleum oil or natural gas which product is derived in whole or in part from any crude petroleum oil or natural gas or any product of either, which crude petroleum oil or natural gas or product was in whole or in part produced, purchased, acquired, sold, transported, refined, processed, or handled in any other way, in violation of any oil or gas conservation Statute of this State, or of any rule, regulation or order of the Commission thereunder, is hereby prohibited."

have been uniformly recognized and sustained in the numerous litigations that have arisen in state and federal courts, in connection with state enforcement.

In Brown v. Humble Oil & Ref. Co., 83 S.W.(2d) 935, 99 A.L.R. 1107, the Supreme Court of Texas in an exhaustive opinion has gathered up and approved the views of these authorities, that the state has validly legislated respecting the conservation of oil and gas, and that the commission is the authorized administrator of those laws. Federal cases are Amazon Petroleum Corporation v. Railroad Commission (D.C.) 5 F.Supp. 633; People's Petroleum Producers v. Sterling (D.C.) 60 F.(2d) 1041; Danciger Oil & Ref. Co. v. Smith (D.C.) 4 F.Supp. 236. In Railroad Commission v. Morgan, 92 S.W.(2d) 1131, the Third Court of Civil Appeals, which, sitting in the capital of the state where statutory suits to review the Commission's orders are by law required to be filed, has decided most of the cases on the subject of tenders, has had occasion to consider and to vigorously affirm and give effect to the statutory prohibitions against the illegal production and the illegal movement of oil and its products. It declared in effect that the tender provisions of the statute are merely supplementary to and in aid of the general provisions against unlawful production. It held, therefore, that one seeking a section 9 review of a refusal of a tender application may not, by merely showing that the Commission's refusal was without a hearing and arbitrary, obtain an injunction. It held that a condition precedent to obtaining a tender or an injunction against its refusal is a showing that the applicant is in possession of oil which has not been illegally produced or handled, and which therefore, in law and in fact, he is entitled to move. Said the court: "It is obvious that a mere failure of an agency of the Commission to discharge the duties imposed by law upon it, cannot in and of itself grant an applicant, who has himself violated the conservation laws and valid rules of the Commission, immunity from its penalties, or give to him any right to move his oil if in fact and in law it be 'unlawful oil' as defined by the Act in question."

In this connection the court called attention to subdivision (g) of section 1 of the act, absolutely and without qualification prohibiting "the approval or registration by an agent of the Commission of a tender for the transportation of any such unlawful oil or unlawful products." It called attention, too, to the provisions of section 10 of article 6049e set out in note 1. Its conclusion was that one may not sell or transport unlawful oil or unlawful products, and that the action of the Commission's agent in declining to hear and arbitrarily refusing the application conferred no right on the possessor of such oil to move it. The effect of the state statutes then under the decisions construing them is to prohibit and prevent absolutely and at all events, as far as it is in the power of the state to do so, the movement in commerce of unlawful or contraband oil.

By section 2 of the federal act (15 U.S.C.A. § 715a) in question here, contraband oil is defined as "petroleum which, or any constituent part of which, was produced, transported, or withdrawn from storage in excess of the amounts permitted to be produced, transported, or withdrawn from storage under the laws of a State or under any regulation or order prescribed thereunder by any board, commission, officer, or other duly authorized agency of such State, or any of the products of such petroleum."

Section 3 of that act (15 U.S.C.A. § 715b) prohibits "the shipment or transportation in interstate commerce from any State of contraband oil produced in such State."

The effect of these statutes and regulations is taking up where the state leaves off, to bar these products from interstate commerce. Congress may do this by prohibiting their movement and imposing penalties upon those who violate the prohibitions. But it may, in addition to and in aid of these prohibitions, set up means, having due and reasonable relation to and confined within the powers exerted, to make these prohibitions effective to prevent the forbidden movement.

■ The District Judge in this case definitely found that appellant is dealing, and intends to deal, in interstate commerce in products made contraband by the laws of Texas, and by those laws forfeit to the state. Section 1 of his order enjoined appellant from continuing its dealings in those products. Certainly as to that prohibition the injunction was well within the court's powers. Sections (2) and (3) of the order, prohibited dealing in East Texas oil or products, not covered by a

federal tender. If this part of the order is wider than the law or the facts of the preliminary hearing require, or if a case might be imagined under its operation where appellant would be prevented, through the arbitrary action of a federal tender board, from moving products not contraband, it will be time enough to consider that at the hearing on the merits or when such a situation arises. As the matter stands before us on this appeal, it is quite plain that ·there is no ground for disturbing the order appealed from, for based on an express finding that all the products appellant had been moving were contraband, and that he intended to continue such movement, it enjoined him from doing so.

The order is affirmed.