### PANAMA REFINING CO. et al. v. RAILROAD COMMISSION OF TEXAS et al.

No. 594.

District Court, W. D. Texas, Austin Division.

Aug. 17, 1936.

W. Edward Lee, of Longview, Tex., for petitioner.

Wm. McCraw, Atty. Gen., and Joe Sharp, C. M. Kennedy, and Wm. C. Davis, Asst. Attys. Gen., for respondents.

Before HUTCHESON, Circuit Judge, and KENNERLY and McMILLAN, District Judges.

HUTCHESON, Circuit Judge.

The suit is in equity. The hearing is on application for interlocutory injunction against respondents, members of the Railroad Commission. The claim is that under the authority of rules and orders the Commission has, wholly without jurisdiction, made requirements and exactions of complainants in regard to intrastate shipments of crude oil and products imported by it from the Rodessa field in Louisiana. The prayer is for an injunction mandatory and preventive, ordering respondents to issue the necessary tenders or certificates for the shipment of crude petroleum now on hand and to be imported, and restraining them from enforcing those provisions of their orders which require proof as to the manner and sources of production of the Louisiana oil imported and to be imported by complainants.

The order of June 24, 1936, of whose requirements complaint is made, requires that an applicant for an intrastate tender for the transportation of imported crude petroleum oil or its products must furnish the following information: (1) A certificate from the conservation authorities of the state it is imported from, showing the source of the oil or product, that is, the well or wells, or the refinery from which it comes. (2) A certificate showing that the oil or product was produced in accordance with the conservation laws of that State. (3) An affidavit showing the railroad tank cars, their initials and numbers in which the shipments move into the state, and the point of origin and destination.

Complainants insist that this order and the requirements made under it constitute an invalid, an arbitrary effort, to exert power not granted, in that (1) the state of Texas has not undertaken to give the Commission authority to require such information as to petroleum products which have come into Texas from outside of it; and (2) if it has so undertaken the statute is invalid as an unlawful burdening of interstate commerce.

The respondents defend the order and their refusal to grant plaintiffs' tenders on these grounds: (1) That in view of the suspicious fact that plaintiffs imported

twenty-seven cars of water falsely billed as petroleum, plaintiffs have not made a sufficient showing to entitle them to a tender, in that they have not shown that the oil or products for which they ask and will ask tenders, are in fact not Texas products, but imported oil; and (2) in order to properly enforce the conservation laws of the state against the transportation of illegally produced oil the Commission is entitled to full information as to the source and origin of any oil or its products tendered, though it was brought in from outside the state. Complainants present the affidavit of their president to the effect that the oil in question was imported from Louisiana, and that the information the Commission calls for in its order and in the application of it to complainants cannot be furnished, for that no such data is gathered, no such records kept in Louisiana as the Commission requires.

Respondents, in addition to a general defense of their rule and their refusal of tenders under it, defend the action in refusing the particular tender in question on the further ground that as to the oil, already imported into Texas, and now in plaintiffs' plant, it was moved into Texas by pipe line after having been brought in by rail without a tender or permit having been gotten for the movement.

Whether such movement as was had from Reed's Switch to the plant was, as complainants contend, merely a part of the interstate movement and therefore required no tender from the State Commission; whether the Commission was justified under the suspicious circumstances of the water shipments in refusing the particular permit requested; whether if the Commission can make reasonable requirements as to proof of source and origin of imported oil, the particular requirements it makes here are unreasonable, and finally whether, as to imported oil, it can make any requirements at all, we need not, on this application for interlocutory injunction, determine. For a fatal objection to granting it arises out of the fact that appealing to a court of equity to compel and to restrain action on the part of state officials, appointed to enforce state conservation laws, and, in enforcing them, to prevent the movement of contraband oil, plaintiffs make no showing either by allegation or by proof, that the oil or products they ask and intend to ask tenders for is oil which they are entitled to move. They make no sufficient showing in short

that the injunctive relief they ask is with reference to noncontraband oil, the only oil to which they could have clear title, the only oil which they could lawfully move.

If we assume, as plaintiffs claim is the fact, that the oil was brought in from Louisiana, we may not assume, in this kind of suit, that it was lawfully brought in, without allegation and proof that it was.

■ The court takes judicial knowledge of the conditions which the Act of February 22, 1935, c. 18, 49 Stat. at Large, p. 30, the Connally Act (15 U.S.C.A. §§ 715–715*l*) was passed to meet, and that there have been large movements, both interstate and intrastate, of contraband oil, that is, oil produced contrary to state laws. The Connally Act prohibits and makes unlawful the movement, in interstate commerce, of contraband oil. It defines "contraband oil" as petroleum which is "produced, transported or withdrawn from storage in excess of the amounts permitted to be produced, transported, or withdrawn from storage under the laws of a State or under any regulation or order" of any duly authorized agency of such state. Section 2 (15 U.S.C.A. § 715a). By section 7(a), 15 U.S.C.A. § 715f(a), it is provided that contraband oil shipped or transported in interstate commerce in violation of the provisions of the act is liable to forfeiture, and may, in a forfeiture proceeding, be seized by the United States and condemned.

■ In Griswold v. President of United States (C.C.A.) 82 F.(2d) 922, the court had occasion to consider this Act and its effect upon commerce in oil produced or handled in violation of state laws and regulations. It declared that state and federal laws must be taken and construed in concert and enforced that way. It sustained an order of the District Judge for the Western District of Louisiana enjoining plaintiff from importing into Louisiana, products, contraband because produced in violation of Texas laws. The principle that one seeking the aid of a court of equity to enjoin state officers must show an invasion of his property rights, and that those property rights must have a firm legal foundation, is not a new one. The decisions of state and federal courts settle it that courts of equity do not issue their writs to aid law violators, to assist them in evading valid laws. Hercules Oil Co. v. Thompson (D.C.) 10 F.Supp. 988; Railroad Commission v. Archer (Tex.

292

Civ.App.) 80 S.W.(2d) 506; Railroad Commission v. Morgan (Tex.Civ.App.) 92 S. W.(2d) 1131. Nor will they issue their writs to interfere with state officers, where the question of the legality or illegality of plaintiffs' action is not clear. Bradford v. Hurt (C.C.A.) 84 F.(2d) 722.

■ In Railroad Comm. v. Morgan (Tex.Civ.App.) 92 S.W.(2d) 1131, it was held that it was not sufficient for an applicant for injunction against the refusal of the Commission to issue a tender, to show merely that the refusal has been arbitrary· or without a hearing. He must also show that he is in possession of oil which has been legally produced, and which therefore in law and in fact he is entitled to move. We have time and again had occasion to point out that the Commission may not unduly interfere with either intrastate or interstate commerce, and that it may not make regulations which are unreasonable in that they cannot, in the nature of things, be complied with, and therefore have no just and reasonable relation to the power exerted. We have, however, pointed out that it may make reasonable regulations, Atlas Pipe Line Co. v. Sterling (D.C.) 4 F.Supp. 411. Cf. Mintz v. Baldwin, 289 U.S. 346, 53 S.Ct. 611, 77 L.Ed. 1245; Red "C" Oil Mfg. Co. v. Board of Agriculture, 222 U.S. 380, 32 S.Ct. 152, 56 L.Ed. 240; and that one may not obtain an injunction against an order of the Commission refusing a permit with regard to the handling and movement of oil upon a mere showing that a particular order, action or rule of the Commission is unreasonable. He must show, further: (1) That he is in possession of legally owned and legally held oil, the proper subject of transportation. (2) That he has in good faith complied with all of the reasonable regulations and requirements. Melton v. Railroad Comm. (D.C.) 10 F. Supp. 984; Lacy v. Railroad Comm. (D. C.) 10 F.Supp. 990. Or (3) that he was and is in good faith willing to comply with them and would do so except that to comply with them in the face of the insistence upon the unreasonable and illegal requirements would be a useless and empty form. City Bank Farmers' Trust Co. v. Schnader, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628; Gully v. Interstate Natural Gas Co. (C.C. A.) 82 F.(2d) 145.

Applying these principles here, it plainly appears that plaintiffs are not entitled to the injunctive relief they ask for. They do not show that they have made reasonable efforts to make a reasonable showing to the Commission in connection with their application for tender, that the oil they handle is not contraband, either under the laws of Louisiana or of Texas, and therefore oil which they may properly transport. Further, they make no showing whatever in their application to us that this is the case as to the oil and products they ask an injunction for.

The application for interlocutory injunction will therefore be denied without prejudice to the right of complainants to reapply, if after due application to the Commission and a reasonable showing there that the oil they desire a tender for is not contraband, that is, has not been produced illegally and in violation of Texas or Louisiana laws, its application for tender is again refused.

■ We do not understand respondents to claim that under their rule they may require permits or tenders for oil moving interstate from Louisiana to Texas. We do not think the rule requires .or permits such construction. We think, though, that the Railroad Commission may, in connection with an application for intrastate permit as to oil claimed to have been brought into Texas, require a reasonable showing that it is not contraband oil under state or federal law.

■ We have considered also, and have rejected, respondents' contention that complainants have not exhausted their administrative remedies by first bringing suit in the state court, as provided by the Texas statutes. We think the case is ruled not by Porter v. Investors' Syndicate, 286 U.S. 461, 52 S.Ct. 617, 76 L.Ed. 1226, but by City Bank Farmers' Trust Co. v. Schnader, supra. The suit provided for by the Texas statute is a plenary and judicial one. It is not a continuation of the administrative proceeding begun before the Commission. If, therefore, complainants or any others have a sufficient constitutional question against an order of the commission, they are entitled to assert it by suit in equity in any Federal court having jurisdiction. If in short they have 'a constitutional question entitling them to resort to a federal court, they may not be compelled to take their litigation to the state court. State Corporation Commission v. Wichita Gas Co., 290 U.S. 561, 54 S.Ct. 321, 78 L.Ed. 500.

The injunction applied for is denied.