**THOMPSON et al. v. SPEAR et al.**
No. 8440.

Circuit Court of.Appeals, Fifth Circuit.
July 23, 1937.

Rehearing Denied Aug. 26, 1937.

William McCraw, Atty. Gen. of Texas, and Harry S. Pollard, W. J. Holt, Wm. Madden Hill, Earl Street, and Wm. C. Davis, Assts. to Atty. Gen. of Texas, all of Austin, Texas, for appellants.

Fred Upchurch and Willis E. Gresham, both of Austin, Tex., and James F. Gray, of Dallas, Tex., for appellees.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This appeal, by members of the Railroad Commission of the state of Texas, is from a final decree confirming the title of appellees to the oil hereinafter mentioned, and granting an injunction perpetually restraining the members of said commission, their agents, and attorneys from doing any act or thing to prevent or delay the sale or transportation of 102,000 barrels of oil produced in excess of proration orders promulgated under the laws of said state. The original bill was filed by Angus Spear against Thomas D. Humphreys and others. The relief sought against Humphreys was denied and no appeal is taken therefrom. However, in his answer, Humphreys joined with Spear in seeking relief against appellants, and is joined before this court as appellee.

On May 21, 1931, Spear, being the owner of a 20-acre tract of land in Gregg county, Tex., executed an oil and gas lease to Humphreys, under which the latter drilled 15 oil wells, all capable of producing oil and gas. All of the wells produce from the common pool of what is known as the East Texas Oil field. The total investment by Humphreys was $282,-000, while the interest retained by Spear was the usual one-eighth royalty in the oil and gas produced on the leased premises. The 20-acre tract is completely surrounded by oil and gas producing lands, and is only a small unit of the large area which makes up the field.

Statutes of the state of Texas authorize the Railroad Commission to determine, after notice and hearing, a quota, or daily allowable production, for each oil or gas well in the state, in conformity with the fixed policy, established by statute, of conserving these natural resources in the public interest. The allowable quota for the area, including the Spear-Humphreys tract, had been determined for 1933, 1934, and 1935, and the validity of this determination is not brought into question. Adjoining landowners and lease operators vastly overproduced from their wells, violating the orders and regulations of the Railroad Commission, and draining the oil and gas bearing strata in the vicinity of appellees' wells to the extent that, whereas, if the production had been lawful, it is certain that the wells would have continued capable of producing several hundred times their allowable production without treatment or artificial aids; but, as a result of the excessive, wasteful, and unlawful production from adjoining wells, it became necessary for appellees to treat their wells in order to produce the quota allowed by the commission. During the period when the adjoining wells were being notoriously overproduced, appellees made repeated demands upon the commission and its field representatives for protection of its lease from draining by such overproduction, and undertook to, and did, co-operate with the commission in the performance of the function of enforcement by furnishing information as to what wells were running in violation of the law, when said wells were running, going with the agents to the adjoining premises to obtain evidence of violations of the law, discovering evidence of violations by investigations independently made and furnishing the same to the commission, joining an association formed to aid and support the commission, and by buying the deficiency warrants of the state when the commission was without funds properly to perform its functions. While the neighboring wells were overproducing, Spear

and Humphreys, for the purpose of protecting their interests in the oil to whatever extent they could, entered into an agreement whereby Spear advanced $24,000 for the construction of two storage tanks, each to have a capacity of 55,000 barrels of oil, the tanks to be filled with oil produced from the leased premises in excess of the daily allowable production fixed by the commission, and thereafter to be disposed of when conditions were favorable, the proceeds to be applied, first to the repayment of Spear of the advance for the construction of the tanks, the remainder to be divided equally between them. This agreement was executed to the extent of constructing the tanks and running the oil to fill them.

The failure of the Railroad Commission to function effectively was not due to any evil motive or willful discrimination, either by its members or agents, but was caused by the inherent difficulty in enforcing the conservation statute with inadequate funds, particularly in view of the mild penalties provided in the act. A statement of the difficulties besetting enforcement is not necessary, but the condition is, in part, illustrated by the attitude and conduct of appellees. The maximum penalties of $1,000 for each act of violation for each day of the continuation thereof, when applied to the $102,000 worth of oil produced by appellees, amount in the aggregate to $10,000. So, whatever appellees' motives were at the time, assuming that the tanks would be worthless after the removal of the oil, the unlawful production of the oil would produce a profit of $68,000 after the payment of penalties. Injunctive procedure in aid of enforcement had proven of little value to the commission, and, as some of the neighboring leases and wells represented such large investments as to be unprofitable unless produced in excess of quotas, a situation was created where the violation of the state laws, and regulations thereunder, was more common than observance, the sovereign power of the state being taxed to the extent of requiring the declaration of martial law for a time.

On May 11, 1935, the Legislature of the state of Texas amended its conservation laws (Acts Tex.1935, c. 246 [Vernon's Ann.Civ.St. art. 6066a]), providing new forms of procedure, new penalties, and a more effective agency for their enforcement. Among other things, the act provided that "all unlawful oil and unlawful products, regardless of the date of production or manufacture thereof, are hereby declared to be a nuisance and shall be forfeited to the State as hereinafter provided" (section 10(a), and defined "unlawful oil" as meaning oil which "has been produced within the State of Texas from any well or wells in excess of the amount allowed by any order of the [Railroad] Commission, and oil which has been produced within said State in violation of any law of said State or in violation of any order of the Commission" (section 1(d). The law further provides for judicial seizure and forfeiture of unlawful oil to the state of Texas Section 10, art. 6066a, Vernon's Ann.Civ.St.Tex. This legislation was passed subsequent to and consonant with the so-called Connally Hot Oil Act, effective February 22, 1935 (15 U.S.C.A. § 715 et seq.), under which appropriate enforcement agencies were established. The two agencies began to function, and, as a result of the more stringent provisions of the two acts, as well as the co-operative efforts of the two agencies, many cases were made for injunctions, forfeitures, and criminal prosecutions, so that in a comparatively short time orderly government replaced chaotic disorder.

On November 27, 1936, appellee Spear filed his original bill of complaint charging that appellee Humphreys had done nothing toward marketing the oil in storage; that both appellees were prevented from applying to the commission and to the Federal Tender Board for permission to remove said oil in commerce, or to market the same, by regulations of the commission which required the execution of an affidavit that the oil had been produced in accordance with its rules, regulations, and restrictions;[1] that permission to move the oil had been denied and would be denied, and that movement of the oil without such permission would subject appellees to severe penalties and forfeitures; and that, by virtue of the willful or negligent failure of the commission to enforce its proration orders and regulations, whereby other wells were run and the deposits depleted, while appellees had observed the proration orders, its

---

[1] So much of the original bill as sought relief against the members of the Federal Tender Board was dismissed.

refusal now to permit the movement of the oil in question constituted a denial of equal protection of the laws and a deprivation of property without due process, in violation of the Fourteenth Amendment to the Constitution. Jurisdiction was invoked on the ground that the suit was one under the Federal Constitution and laws.

The bill further alleged that no other remedy than that sought therein was available; that, due to evaporation, the quantity of oil had already been reduced from 110,000 barrels to 102,000 barrels; that a purchaser had been found who was willing to pay a stipulated price as soon as lawful delivery could be made; and prayed that appellants be enjoined from interfering with the movement of the oil, and be required to issue permits for, and to allow its movement in commerce; and, further, that appellee Spear be adjudged to have a valid lien for $24,000 and a one-half interest in the balance of the proceeds, and for the appointment of a receiver and the sale of the oil.

Appellants moved to dismiss the bill for want of federal jurisdiction, want of equity, and because in effect the state of Texas was made a party defendant. The court refused to dismiss the bill; appellants answered joining issue on its allegations, after certain amendments had been made; and trial was had, resulting in the decree from which this appeal was taken.

■ The suit being one for relief against unlawful enforcement of lawful regulation, it was properly brought against the members of the commission. The acts complained of were the acts of the commission, it members, or agents. For justification, they could rely on the valid laws of the state, if they had lawfully proceeded thereunder. The state was not a party to the proceeding. The bill sufficiently charged willful discrimination, and was properly brought in the division and district where some of the defendants resided, the other defendants being residents of the state of Texas. Hence, there were equity in the bill, jurisdiction in the court, and proper venue; also there were proper parties for a complete determination of the controversy. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Reagan v. Farmers Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014; Ah Sin v. Wittman, 198 U.S. 500, 25 S.Ct. 756, 49 L.Ed. 1142; Sterling v. Constantin,

287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375; 28 U.S.C.A. § 113.

■ The validity of the statutes and of the rules and regulations of the commission is upheld in the following cases: Griswold v. President of the United States (C.C.A.) 82 F.(2d) 922; Atlas Pipe Line Co. v. Sterling (D.C.) 4 F.Supp. 441; Melton v. Railroad Commission (D.C.) 10 F.Supp. 984; Hercules Oil Co. v. Thompson (D.C.) 10 F.Supp. 988; Panama Refining Co. v. Railroad Commission (D.C.) 16 F.Supp. 289; Danciger Oil & Refining Co. v. Railroad Commission (Tex.Civ. App.) 49 S.W.(2d) 837; Alpha Petroleum Co. v. Railroad Commission (Tex.Civ. App.) 59 S.W.(2d) 374; State v. Blue Diamond Oil Corporation (Tex.Civ.App.) 76 S.W.(2d) 852; Railroad Commission v. Burnham (Tex.Civ.App.) 80 S.W.(2d) 496; Railroad Commission v. Tyler Texas Oil & Refining Co. (Tex.Civ.App.) 80 S. W.(2d) 500; Railroad Commission v. Linzie Refining Co. (Tex.Civ.App.) 80 S.W. (2d) 504; Railroad Commission v. Archer (Tex.Civ.App.) 80 S.W.(2d) 506; Railroad Commission v. Bradshaw (Tex. Civ.App.) 80 S.W.(2d) 508; Railroad Commission v. Primrose Petroleum Co. (Tex.Civ.App.) 80 S.W.(2d) 509; Railroad Commission v. Goodson (Tex.Civ. App.) 81 S.W.(2d) 279; Railroad Commission v. Morgan (Tex.Civ.App.) 92 S. W.(2d) 1131.

■ Thus, whether appellees were being denied equal protection of the laws and deprived of property without due process depend upon whether the acts of the commission were in accordance with the statutes, rules, and regulations, and without arbitrary or unreasonable discrimination. The proof fails to show that the failure of the commission to control production prior to the Connally Act and prior to the amendment of the Texas conservation laws was either negligent or willful, and, without such a showing, appellees have no right to relief. Ah Sin v. Wittman, 198 U.S. 500, 25 S.Ct. 756, 49 L.Ed. 1142; Mackay Telegraph & Cable Co. v. Little Rock, 250 U.S. 94, 100, 39 S.Ct. 428, 63 L.Ed. 863. It appears that the commission was making a diligent effort to enforce the law and regulations fairly and impartially but was unable to do so. Its mere inability does not render such enforcement as it accomplished wrongful. The fact that others have violated the law with impunity is no de-

fense. It is only where the enforcement agency is vested with a discretionary power and exercises its discretion arbitrarily and unjustly that enforcement of valid regulation becomes violative of the equal protection clause.

Under the statutes and regulations, constitutional and valid as they have been held to be, the officers and agents of the Railroad Commission are given no discretionary power to grant or withhold permission to transfer unlawful oil. They are specifically enjoined not to do so, and are under a mandate to proceed for its condemnation and forfeiture in a proper case. Any willful or negligent failure to enforce these provisions would constitute a wrong against the sovereign, and be contrary to the public interest; but would, in no instance, enhance the rights of the wrongdoers. Wholesale lawlessness does not give a citizen the right to proclaim a suspension of the law and to proceed himself to violate it; if he attempts to do so, he is clearly outside the protection of a court of equity, into which he must come with clean hands. This court should not further aggravate a lawless condition, but, so long as it is allowed to function, must lend its aid to orderly government, however ineffective its administration may be. Pacific States Box & Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853.

It cannot be said that, because the regulations which prevent the marketing of the oil were promulgated by the commission in the exercise of a discretionary power, the commission has the discretion to proceed or refrain from acting under them. Having promulgated a regulation that is valid, fair, and just, it may not discriminate between those against whom it is intended to be enforced. Such enforcement would embody the very evils which would render it unlawful. If the commission may modify or repeal the provisions, this fact is likewise irrelevant. The modification or repeal must be in the exercise of its discretion in the public interests. Such discretion is not subject to judicial control.

Appellees insist that their property was being taken from them by wrongdoers, and that, in order to preserve a part of it, it was necessary for them to run the oil in question, and that, in so doing, they were justified by the law of necessity; that, therefore, the oil is not unlawful, and their rights of ownership may not be restricted. The effect of the argument is that an exception should be read into the statute and regulations which would permit the movement of the oil in question. Numerous authorities are cited in support of this argument, but none of them sustain the contention advanced. The facts of this case come within the rule announced in the authorities cited. We find no basis on which such an exception can be engrafted upon the law. The appellees were not in extremis when the oil was produced.

The oil in question was produced in violation of the conservation laws of the state of Texas. By reason of this, appellees have no right to move it in commerce. The refusal to permit its movement was a ministerial act required by law. The effect of this refusal may not be avoided by a court of equity.

The decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.